**Bernice Leona PYLE, and Harry Oswald Pyle, her Husband, Appellants,**

v.

**Larry H. LAYTON, Respondent.**

**No. 27046.**

Missouri Court of Appeals,
Southern District,
Division Two.

April 27, 2006.

Douglas R. Kennedy, Kennedy, Kennedy & Robbins, LC, Poplar Bluff, for Appellant.

Wendell W. Crow, Crow, Reynolds, Shetley & McVey, LLP, Kennett, for Respondent.

ROBERT S. BARNEY, Judge.

Bernice Leona Pyle and Harry Oswald Pyle ("Appellants") appeal the trial court's grant of Larry H. Layton's ("Respondent") motion for summary judgment arising from their negligence claims.[1] Appellants allege three points of trial court error. Their second point is dispositive and it, alone, will be addressed. We reverse and remand the trial court's grant of summary judgment.

The record reveals that on the afternoon of November 16, 2002, Appellant Bernice Pyle ("Bernice") was driving south on Missouri Highway 25. As she was driving, Bernice's Lincoln Town Car encountered a line of slow moving traffic behind a Dodge Ram pickup truck pulling a Monte Carlo sedan on a chain. Bernice's vehicle was the fifth vehicle in line behind the Dodge Ram and the Monte Carlo. Suddenly, a wheel fell off of the Monte Carlo and rolled into the opposite, north-bound lane, striking the tire of a Ford truck driven by Respondent, which was traveling in the opposite direction. Respondent, who was driving approximately forty to forty-five

---

1. Also involved in this lawsuit, but not parties to this appeal, are Joshua L. Kammerdiener ("Kammerdiener"), Christopher McCoy ("McCoy"), and Joseph P. Adams ("Adams"). We note that Respondent has filed a motion to dismiss this appeal due to Appellants' failure to comply with Rule 84.04. We deny his motion.

All rule references are to Missouri Court Rules (2005).

miles per hour, did not swerve or brake to avoid the wheel. Respondent's vehicle struck the loose wheel and his vehicle crossed the centerline, striking a blue Chevrolet Cavalier in front of Bernice, which was driven by Gary Wrinkle ("Wrinkle"). Respondent's vehicle then struck the front of Bernice's vehicle and crushed the hood of her Town Car before coming to rest near a ditch adjacent to the opposite lane of traffic. As a result of the accident, Bernice suffered multiple injuries, was hospitalized for a period of time, and was left permanently disabled.

Appellants filed suit in a six-count petition against McCoy, the driver of the Dodge Ram; Adams, the driver of the towed Monte Carlo; Respondent; and Kammerdiener, the owner of the Dodge Ram.[2] On February 19, 2004, Respondent filed a motion for summary judgment with the trial court.

In his motion, Respondent asserted that there were no genuine issues of fact alleged against him in Appellants' petition and, accordingly, he was entitled to summary judgment as a matter of law. In his "Statement of Uncontroverted Material Facts" attached to his motion for summary judgment, Respondent pointed out that not only did Bernice state in her deposition

that she did not remember seeing his truck prior to the accident, but that "the last thing [she] remember[ed] before the accident is seeing that tire [in the middle of the road]." In support of his motion for summary judgment, Respondent also attached his deposition in which he noted he had "less than a second ..." to react to the loose wheel that hit his truck and that he "didn't have time" to put his foot on the brake prior to the wheel coming into contact with his truck.

On May 13, 2005, the trial court, granted Respondent's motion for summary judgment. This appeal followed.

In reviewing appeals from the grant of a motion for summary judgment, this Court reviews "the record in the light most favorable to the party against whom judgment was entered." *Reese v. Ryan's Family Steakhouses, Inc.*, 19 S.W.3d 749, 751 (Mo.App.2000). "Facts set forth by affidavit or otherwise in support of a party's motion are taken as true unless contradicted by the non-moving party's response to the motion." *Id.* Since the standard of appellate review on a motion for summary judgment is no different than that employed by the trial court in determining the propriety of sustaining the initial motion, our review is essentially *de novo.*

---

2. The first three counts of Appellants' petition alleged personal injury to Bernice arising from the negligence of McCoy, Adams, and Respondent respectively. The final three counts of Appellants' petition, which were also against the aforementioned parties, were brought by Bernice's husband, Harry, as derivative claims for deprivation "of the consortium, services, society, association, companionship and enjoyment of [Bernice]."

Specifically, we note that in Count III of their petition against Respondent, Appellants asserted:

[t]he acts of negligence of [Respondent] which were the direct cause of the collision, injuries and damages to [Bernice] were as follows:

(a) [Respondent] negligently and carelessly failed to exercise the highest degree of care;
(b) [Respondent] failed to keep a careful lookout for other vehicles in the area, and in particular the vehicle being driven by [Bernice];
(c) [Respondent] negligently drove at an excessive rate of speed under the conditions;
(d) [Respondent] knew, or by the use of the highest degree of care could have known that there was a reasonable likelihood of a collision in time thereafter to have stopped or swerved or slackened speed, but [Respondent] failed to do so;
(e) [Respondent] drove on the wrong side of the road;
(f) [Respondent] failed to maintain his vehicle in a proper manner.

*ITT Comm'l Fin. Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993).

" '[T]he key to a summary judgment is the undisputed right to a judgment as a matter of law; not simply the absence of a fact question.' " *Birdsong v. Christians*, 6 S.W.3d 218, 223 (Mo.App.1999) (quoting *Southard v. Buccaneer Homes Corp.*, 904 S.W.2d 525, 530 (Mo.App.1995)). As such, a grant of summary judgment is appropriate "[w]hen a moving party makes a prima facie showing that there are no genuine issues of material fact and that the movant is entitled to a judgment as a matter of law...." *McAninch v. Robinson*, 942 S.W.2d 452, 456 (Mo.App.1997). As stated in *Luallen v. Reid*, 58 S.W.3d 50, 52 (Mo. App.2001),

> A defending party may establish a right to judgment as a matter of law by showing any one of the following: (1) facts that negate any one of the elements of the claimant's cause of action; (2) the non-movant, after an adequate period of discovery, has not and will not be able to produce evidence sufficient to allow the trier of fact to find the existence of any one of the claimant's elements; or (3) there is no genuine dispute as to the existence of each of the facts necessary to support the movant's properly-pleaded affirmative defense.

Where the facts underlying this right to judgment are beyond dispute, summary judgment is proper. *See ITT Comm'l Fin. Corp.*, 854 S.W.2d at 381.

■ In their second point on appeal, Appellants maintain the trial court erred in granting summary judgment in favor of Respondent

> [b]ecause its decision that no genuine issue of material fact existed in relation to the duty of care owed by [Respondent] to [Bernice] was erroneous in that

Appellants presented evidence first, that [Respondent] *drove on the wrong side* of the road impacting the vehicle being driven by [Bernice], and second, that [Respondent] deliberately and consciously *chose not to brake* to reduce the severity of the accident and *chose not to swerve* to avoid the tire which was in his lane, both of which contradicted [Respondent's] statement of uncontroverted material facts and presented a situation wherein reasonable minds could differ as to whether [Respondent] exercised the appropriate standard of care in relation to avoiding the accident.

(Emphasis added).

■ The presence of a motor vehicle on the wrong side of the road at the time of a collision is sufficient to create an inference of negligence. *Friederich v. Chamberlain*, 458 S.W.2d 360, 365 (Mo. banc 1970). A vehicle's presence on the wrong side of the road may be excusable, but the driver has the burden of proving justification. *Id.* at 366. As stated in *Friederich*,

> (1) A submissible case cannot be made against an operator of a motor vehicle by proof that it merely skidded into collision with another vehicle on a highway. (2) However, if the skidding vehicle is on the wrong side of the road when the collision occurs, an inference of negligence is created. A prima facie case is made.... (3) The burden of evidence then shifts to the operator of the skidding vehicle to excuse the presence of his vehicle on the wrong side of the road. (4) If no evidence of justification is presented, the question of negligence is for the jury.

*Id.*[3]

■ "In a negligence action, the claimant must establish the following elements: (1) the existence of a duty to conform to a

---

**3.** Section 304.015.2 states,

2. Upon all public roads or highways of

certain standard of conduct to protect others against unreasonable risks, (2) breach of the duty, (3) proximate cause, and (4) actual damages." *Sanders v. Slayden,* 944 S.W.2d 228, 230 (Mo.App.1997). " 'Summary judgment is not as feasible in negligence cases as it may be in other types of cases.' " *Luallen,* 58 S.W.3d at 52 (quoting *Hammonds v. Jewish Hosp. of St. Louis,* 899 S.W.2d 527, 529 (Mo.App.1995)).

It is undisputed that at the time Respondent's Ford Truck collided with Bernice's Town Car, the Ford Truck was on the wrong side of the road. The submitted deposition testimony of Respondent, Bernice and Wrinkle attest to this fact.

Additionally, Respondent stated that on the day of the accident he "didn't notice anything amiss [with the string of oncoming traffic] until the tire popped out of the oncoming lane." He recalled that he was traveling "[a]pproximately forty miles an hour.[He] never drove the truck [which belonged to his mother] over forty-five and [he] wasn't in any hurry ..." At the time Respondent first saw the tire "[i]t was probably just almost in the center of [his driving] lane ... [i]t just popped out of the oncoming lane and it was right there." Respondent stated that when he saw the tire he "let off the accelerator and just took a death grip on the steering wheel because ... it was right there and [he]

knew it was going to hit." He stated that he had less than a second to react; that he didn't have time to put his foot on the brake; that he did not steer to the right or the left because he "was trying to hold [his] lane" and there was oncoming traffic in the other lane; that he did not necessarily make a conscious decision on how to react when he saw the tire, "it was more or less an instinct to just try to stay in [his] lane ... [the tire] was too close and [it] happened too quickly;" that once he struck the tire he felt like his vehicle was on ice and "[t]he sensation ... [was like when] you are trying to wiggle around on the ice and you feel that you have, you know, no control;" that "the truck just seemed to be slipping towards an oncoming lane" and he was "trying to maneuver back in ..." his own lane; that he did not recall putting his foot on the brake once the truck began sliding; and that he did not know how far he traveled after hitting Bernice's vehicle. Respondent stated that in retrospect he did not think he could have done anything different to avoid the collision "[o]ther than staying home...."

In response to Respondent's motion for summary judgment Appellants submitted an affidavit from their expert witness, William E. Hampton ("Hampton"), a trained accident reconstruction specialist.[4] Prior to making the conclu-

---

sufficient width a vehicle shall be driven upon the right half of the roadway, except as follows:

(1) When overtaking and passing another vehicle proceeding in the same direction pursuant to the rules governing such movement;

(2) When placing a vehicle in position for and when such vehicle is lawfully making a left turn in compliance with the provisions of sections 304.014 to 304.026 or traffic regulations thereunder or of municipalities;

(3) When the right half of a roadway is closed to traffic while under construction or repair;

(4) Upon a roadway designated by local ordinance as a one-way street and marked or signed for one-way traffic.

Unless otherwise noted, all statutory references are to RSMo 2000.

4. The formulation of an opinion by an expert is sufficient to demonstrate the existence of a genuine issue of fact. *See (Southard,* 904 S.W.2d at 529) (wherein the affidavit of third-party plaintiffs' expert, in countering a motion for summary judgment, expressed the opinion that a certain furnace was defective, thereby demonstrating the existence of a genuine issue of fact). Thus, in the context of a motion for summary judgment, "[e]xperts

sions delineated in his affidavit, Hampton set out that he had reviewed the various depositions of the parties and witnesses and other matters set out in an accident report filed by an officer of the Missouri State Highway Patrol, including the physical descriptions of the driving lanes in question. He set out that while Respondent had stated "he did have time to let off of his vehicle's accelerator," and that he "put a grip on his steering wheel, and thought of holding his lane, he [nevertheless] failed to slow his vehicles [sic] by braking, or steer to the right, to escape the danger of the loose wheel." Hampton also related that at "no time does anyone describe the tire traveling under [Respondent's] vehicle, or becoming lodged in any part or path of the vehicle."

Hampton also stated that the driving lanes of the road in question were "twenty-two feet and three inches in width ..." with each "driving lane of the roadway as eleven feet and one and a half inches in width" and "the shoulders of the road are six feet and four inches in width." Such dimensions "would allow [Respondent] a field of seventeen feet, five and one-half inches of a northbound traffic lane and shoulder to escape the dangers of the loose wheel."

Hampton went on to state there was no evidence that Respondent attempted to apply his brakes, either prior to or after his vehicle impacted the tire, and that after Respondent hit Wrinkle's vehicle he "continued to travel another ninety-feet before striking [Bernice's] vehicle, and traveling an additional forty-eight feet prior to coming to a rest." Hampton set out that the foregoing distance measurements "do not take into consideration the distance [Respondent's] vehicle traveled from the time it struck the tire in his lane, and the distance it traveled prior to striking the Wrinkle vehicle." According to Hampton and his calculations, Respondent traveled a minimum of "two hundred and sixteen feet, and possibly up to three [h]undred feet, from the time [Respondent's] vehicle struck the tire, impacted with the Wrinkle [vehicle] and [Bernice's] vehicle[ ], and finally came to a rest." Accordingly, if Respondent had been traveling "[a]t a minimum speed of forty-five miles per hour ..." Respondent "should have been able to stop his vehicle at a braking distance of one hundred twenty feet, with a road surface coefficient of friction of .65, and a braking efficiency of .90 ...." According to Hampton, had Respondent applied his brakes or slowed his vehicle, he could have "reduced the seriousness of the impact with [Appellants'] vehicle."

■ "Negligence is ordinarily a question for the jury and always is when the evidence on the issue is conflicting or where, the facts being undisputed, different minds might reasonably draw different conclusions from them." *Bryan v. Missouri State Highway Patrol*, 963 S.W.2d 403, 406 (Mo.App.1998). This is especially true in the present matter, where Hampton's affidavit presents conflicting facts about whether Respondent breached the duty of care owed to Bernice in the operation of his motor vehicle.[5] Under Rule

may base their opinions on personal observations or on competent evidence in the case, or on both." *Casey v. Florence Const. Co.*, 939 S.W.2d 36, 39 (Mo.App.1997). "In any case, experts will be filtering the facts through their specialized knowledge gained through education, training, and experience." *Id.* Accordingly, in a motion for summary judgment in *Casey*, the testimony of plaintiff's expert was admissible, even though he had not observed the accident or accident site but reviewed, among other matters, exhibits, a deposition, and a copy of the police report of the accident. *Id.* at 40.

5. We note that nothing in the record suggests that the motion court specifically excluded the expert's affidavit as being unnecessary to its determination, as Respondent suggests in his brief.

74.04, a genuine issue exists where the record contains competent materials that evidence two plausible, but contradictory, accounts of the essential facts. *ITT Comm'l Finance Corp.*, 854 S.W.2d at 382.

■ We determine that Hampton's affidavit established a genuine issue of material fact as to whether Respondent violated the standard of care owed to Appellants by failing to either brake or swerve his vehicle to avoid the accident or minimize the consequences of the collision. Keeping in mind that " '[s]ummary judgment is not as feasible in negligence cases as it may be in other types of cases,' " *Luallen*, 58 S.W.3d at 52 (quoting *Hammonds*, 899 S.W.2d at 529), and that the question of a breach of duty is one of fact for the jury to determine, *see Lumbermens Mut. Cas. Co. v. Thornton*, 92 S.W.3d 259, 266 (Mo.App. 2002), we find that the trial court erred in granting summary judgment in favor of Respondent as a matter of law. Appellants' Point II has merit.

The summary judgment in favor of Respondent is reversed and the matter is remanded to the trial court for further proceedings consistent with this opinion.

SHRUM, P.J., and BATES, C.J., concur.