**ABC SEAMLESS SIDING & WINDOWS, INC., Appellant,**

v.

**Brian K. WARD, et al., Respondents.**

**No. WD 75361.**

Missouri Court of Appeals, Western District.

March 5, 2013.

Motion for Transfer to Supreme Court Denied April 30, 2013.

Application for Transfer Denied May 28, 2013.

---

Kirk R. Presley and Kana R. Lydick, Kansas City, MO, for Appellant.

Jill Frost Smith, Kevin D. Brooks and Nikki E. Cannezzaro, Kansas City, MO, for Respondents.

Before Division Two: KAREN KING MITCHELL, Presiding Judge, and THOMAS H. NEWTON and LISA WHITE HARDWICK, Judges.

KAREN KING MITCHELL, Presiding Judge.

ABC Seamless Siding & Windows, Inc. (ABC), appeals the trial court's grant of summary judgment in favor of Brian K. Ward; Brian K. Ward Agency, LLC; and Brian Ward Agency, Inc. (Ward), on ABC's claims for negligence, negligent misrepresentation, and breach of fiduciary duty, all premised upon Ward's allegedly erroneous advice to one of ABC's owners, Christopher Scott Martin, indicating that

ABC need not obtain workers' compensation insurance. We affirm.

## Factual Background [1]

Martin had worked in the siding and windows business for approximately fifteen years when he began working for Dale Oyer, the owner of the ABC Seamless of Kansas City franchise. At that time, Oyer had owned the Kansas City franchise for twenty-two or twenty-three years.

In January 2006, Martin considered purchasing his own ABC franchise, and he sought Oyer's advice. Oyer told Martin that he would be interested in joining Martin in purchasing another franchise. Martin began to determine what the start-up costs would be in order to decide whether he could afford the franchise. That same month, Martin attended an ABC Seamless franchise meeting with Oyer, where Martin met with other franchise owners and discussed advertising costs, sales, and volume.

ABC alleges that sometime in February or March 2006, Martin contacted Brian Ward, an insurance agent for American Family Insurance Company whom Martin had used for his personal insurance needs the preceding fifteen years, to discuss the insurance costs and needs for the franchise. ABC claims that Martin asked Ward if he would need workers' compensation insurance, and Ward advised him, "if you're a corporation with two or less employees that—that were officers, that you were not required in Missouri to have Workers' Compensation." [2] This information was consistent with what Oyer had

advised Martin—that if they were using only subcontractors, they did not need to have workers' compensation insurance because the subcontractors would carry it. Oyer instructed Martin, however, to be sure to always obtain certificates of liability insurance from his subcontractors to verify that the subcontractors carried workers' compensation insurance in the event of a work-related injury.

On December 12, 2006, Martin and Oyer, with the help of Circle Tax in Kansas City, formed an S Corporation with Martin and Oyer as the only shareholders, each with an equal number of shares. Consistent with the alleged advice from both Ward and Oyer, individuals at Circle Tax also indicated that, if the business was filed as an S Corporation and had two or fewer employees, they would not need workers' compensation insurance.

Eventually, Oyer and Martin agreed that Springfield, Missouri, would be a good location for the new franchise, and, on December 26, 2006, Martin moved to Nixa, Missouri, to begin the process of starting the business. That same month, when Martin went to the City of Springfield to apply for a business license, he was asked whether he carried workers' compensation insurance. When Martin explained his understanding that, because he was using subcontractors, he was not required to maintain workers' compensation insurance, he was advised that, if he did not carry workers' compensation insurance, he would need to obtain an exemption from the State. He was then given some contact information for the State of Missouri Divi-

---

1. Because this is an appeal from the grant of summary judgment, we view all facts and reasonable inferences derived therefrom in the light most favorable to ABC, the non-moving party. *City of St. Louis v. State*, 382 S.W.3d 905, 910 (Mo. banc 2012).

2. Ward denies ever providing any advice to Martin about workers' compensation insurance, and, in his deposition, Ward indicated that, if Martin had asked whether ABC needed workers' compensation insurance, Ward would have indicated that he did not know and then advised Martin to seek legal counsel.

sion of Workers' Compensation and thereafter contacted the State.

Martin spoke with an employee of the Division, who advised Martin that, if he did not intend to carry workers' compensation insurance, he would need to obtain an exemption. On January 8, 2007, the Division employee sent Martin a letter, advising Martin how to obtain an exemption, along with various excerpts from the Missouri Workers' Compensation Law in order to explain the "proper use of the exemption form and those Missouri employers required to carry workers' compensation insurance for [Martin's] use in determining if [he was] required to purchase workers' compensation insurance." The letter specifically directed Martin's attention to "the requirements for construction industry employers." The statutory excerpts contained construction licensing requirements from sections 287.061.1–.3; the definition of "employer" from section 287.030.1; the sole proprietor and partner exclusion from section 287.035.1; the corporate exemption from section 287.090.5; and the criminal penalties for noncompliance and fraud from section 287.128.[3] Also included with the letter was a "Notice of Employer's Exemption" from the Missouri Department of Labor and Industrial Relations, with a box checked indicating that the reason for exemption was: "Election to be exempt, no more than two (2) owners/no employees of a corporation." Martin filled out the information for his business, and signed and dated the notice on January 12, 2007. He then filed the exemption notice with the Missouri Department of Labor and Industrial Relations. That same day, he also obtained his business license from the City of Springfield.

After obtaining an exemption, Martin contacted Ward to request that Ward procure liability insurance for ABC. Martin did not request that Ward procure workers' compensation insurance. On February 26, 2007, American Family Mutual Insurance Company, through Ward, issued Martin a Commercial General Liability Policy, in accordance with Martin's request, that covered equipment, property, and liability; the policy did not cover any expenses related to on-the-job employee injuries.

In September 2007, ABC employed Gordan Cox, a subcontractor, to handle a siding job. Although Martin discussed workers' compensation coverage with Cox and Cox represented that he carried workers' compensation insurance through Missouri Employers Mutual (MEM), Martin did not obtain a certificate of insurance from Cox to verify coverage. Jerry Baker, an installer hired by Cox, injured himself on the job by cutting the tip of his finger off when removing the blade from his Skilsaw. It was later discovered that, although Cox had a workers' compensation insurance policy through MEM, the policy coverage had lapsed at the time of Baker's injury. Baker sued ABC and Martin. The parties entered into a settlement agreement, whereby Martin agreed to pay $35,000 to Baker to remove himself individually from the lawsuit and agreed to file a civil action on behalf of ABC against Ward for the balance of the judgment in Baker's favor.

ABC filed claims against Ward for negligence, negligent misrepresentation, breach of fiduciary duty, and failure to procure insurance. Following discovery, Ward filed a motion for summary judgment, arguing (1) that ABC's claims failed because Ward had no duty to advise ABC about the need for workers' compensation insurance, because any advice Ward provided about the exemption was true, and because by filing for an exemption to workers' com-

3. Statutory citations are to RSMo 2000, as updated, unless otherwise noted.

pensation, ABC assumed the potential for civil liability; (2) that ABC's negligent misrepresentation claim failed because the information allegedly provided by Ward was not false, and because ABC did not justifiably rely on any information provided by Ward; and (3) that ABC's breach of fiduciary duty and negligent procurement of insurance claims fail because Ward procured every policy requested by ABC. The trial court granted Ward's motion for summary judgment, finding that: (1) Ward had no duty to advise ABC to obtain workers' compensation insurance because ABC "assumed the risk" of civil liability by taking affirmative steps to obtain an exemption for workers' compensation coverage; (2) any statement provided by Ward was true as evidenced by ABC's ability to obtain an exemption; (3) ABC did not justifiably rely on any information from Ward as evidenced by the fact that ABC obtained the exemption before requesting any policies from Ward; and (4) there was no breach of a fiduciary duty insofar as ABC never requested workers' compensation insurance and Ward procured all policies requested by ABC. ABC appeals.

### Standard of Review

"When considering appeals from summary judgments, the Court will review the record in the light most favorable to the party against whom judgment was entered." *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). "Facts set forth by affidavit or otherwise in support of a party's motion are taken as true unless contradicted by the non-moving party's response to the summary judgment motion." *Id.* The non-movant is accorded

"the benefit of all reasonable inferences from the record." *Id.*

Appellate "review is essentially de novo" because "[t]he criteria on appeal for testing the propriety of summary judgment are no different from those [that] should be employed by the trial court to determine the propriety of sustaining the motion initially." *Id.* "If the [summary judgment pleadings] show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law, the court shall enter summary judgment forthwith." Rule 74.04(c)(6).[4] "As the trial court's judgment is founded on the record submitted and the law, an appellate court need not defer to the trial court's order granting summary judgment." *ITT*, 854 S.W.2d at 376.

### Analysis

ABC raises four points on appeal, all challenging the rationale for the trial court's entry of summary judgment in favor of Ward. In its first point, ABC argues that the trial court erred in finding that Ward owed no duty to ABC to advise ABC of its need to obtain workers' compensation insurance or the risks associated with failing to do so. In its second point, ABC argues that the trial court erred in determining that ABC could not demonstrate a breach of fiduciary duty in light of the fact that Ward procured all insurance policies requested by ABC, and ABC reiterates its arguments regarding the existence of a duty of care owed by Ward to ABC. In its third and fourth points, ABC argues that the trial court erred in finding that ABC could not demonstrate that Ward made a negligent misrepresentation in light of the fact that the information allegedly provid-

---

**4.** All rule citations are to the Missouri Supreme Court Rules (2012), unless otherwise noted.

ed by Ward—that ABC was not required to obtain workers' compensation insurance—was true, and that ABC did not justifiably rely on any advice allegedly provided by Ward. Because we find that, in light of the uncontroverted material facts, Ward was entitled to judgment as a matter of law, the entry of summary judgment was proper, and we, therefore, affirm the trial court's judgment.

## A. Operation of the Workers' Compensation Law

■ Because there appears to be some confusion by the parties as to what the Workers' Compensation Law requires, we address this issue first.

■ "The purpose [of the Workers' Compensation Law] is to provide a simple and nontechnical method of compensation for injuries sustained by employees through accident arising out of and in the course of employment and to place the burden of such losses on industry." *Bethel v. Sunlight Janitor Serv.*, 551 S.W.2d 616, 618 (Mo. banc 1977). "[T]he law is intended to enable an injured employee to recover compensation and to do away with the common law defenses and disabilities." *Id.*

The law's scope is extremely broad: "Every employer and every employee, except as in this chapter otherwise provided, shall be subject to the provisions of this chapter and respectively to furnish and accept compensation as herein provided." § 287.060. For purposes of the law, an "employer" is defined, in pertinent part, as "[e]very ... corporation ... using the service of another for pay...." § 287.030.1(1). To fall within the coverage

of the law, however, any "employer[ ] must have five or more employees ..., except that construction industry employers ... shall be deemed an employer ... if they have one or more employees." § 287.030.1(3).

Construction industry employers, however, have the option of withdrawing from the protections of the Workers' Compensation Law—and thereby open themselves up to the risk of civil liability in the face of an employee injury—if they meet certain requirements. "A corporation may withdraw from the provisions of this chapter, when there are no more than two owners of the corporation who are also the only employees of the corporation, by filing with the division notice of election to be withdrawn." § 287.090.5.[5]

According to ABC's allegations, Ward advised Martin that a corporation with two or fewer employees who were both officers of the corporation was not required to carry workers' compensation insurance. This statement is true *only if* the corporation has also applied for and obtained the exemption outlined in section 287.090.5. In other words, the exemption does not automatically flow from the structure of a particular business. And, in the absence of an exemption, the corporation—as a construction industry employer—would still be required to maintain workers' compensation insurance if it had at least one employee, regardless of whether that employee was also an owner.

Here, ABC was a corporation with only two owners (Martin and Oyer), who were also the only employees, and it was engaged in the construction industry insofar as its primary business was installing and

---

**5.** Though the statute regarding withdrawal does not specifically refer to construction industry employers, it must apply to those employers, as others with fewer than five employees would not come within the coverage of the Workers' Compensation Law, and, thus, would not need an election to withdraw. *See* 29B MICHAEL KORTE, MISSOURI PRACTICE: WORKERS' COMPENSATION LAW AND PRACTICE § 1.24 (2d ed.2003).

replacing siding and windows. Thus, before obtaining the exemption, ABC was required by sections 287.030.1(3) and 287.060 to carry workers' compensation insurance. But ABC also qualified for the exemption provided in section 287.090.5;[6] thus, once ABC sought and obtained the exemption, it was no longer required to carry workers' compensation insurance.

## B. Summary judgment was appropriate because ABC cannot demonstrate reliance as a matter of law.

 Although the parties disagree about whether Ward owed a duty of care to ABC (either because of a special relationship or as a fiduciary) and about whether the advice Ward allegedly provided was true,[7] we find that the dispositive issue on all of ABC's claims is the question of justifiable reliance.

 The three claims upon which ABC appeals the grant of summary judgment all require some demonstration of justifiable reliance on the advice allegedly provided by Ward.[8] Negligent misrepresentation expressly requires justifiable reliance as an element of the claim. *Renaissance Leasing, LLC v. Vermeer Mfg. Co.*, 322 S.W.3d 112, 134 (Mo. banc 2010) ("The elements of negligent misrepresentation are: (1) the speaker supplied information in the course of his business; (2) because

---

**6.** ABC contends that it did not qualify for the exemption based upon case law indicating that the subcontractors hired by ABC to install siding or windows are considered employees for the determination of whether an entity meets the definition of an "employer" under the Workers' Compensation Law. And, if those subcontractors are considered employees, ABC would have had more than two employees who were not also owners, thus precluding them from qualifying for the exemption. We disagree. The purpose of the corporate exemption is to allow certain incorporated construction industry employers to pass the cost of maintaining workers' compensation insurance on to subcontractors, rather than maintaining it themselves, if they so choose. *See, e.g.*, § 287.040.3 (addressing the priority of liability as between general contractors and subcontractors for the injury of an employee of the subcontractor). If the existence of subcontractors were considered in determining qualification for the exemption, the exemption would be meaningless, as it would rarely—if ever—be available. And, while we recognize that case law holds that subcontractors are to be counted for purposes of determining whether a given employer falls within the scope of the Workers' Compensation Law, the corporate exemption provision makes no reference to an "employer"; thus, we find that these cases to be inapposite.

**7.** As demonstrated by the discussion of the Workers' Compensation Law in subsection A, *supra*, whether Ward's alleged statement was

true depends entirely upon when it was made. If it was made before ABC obtained the exemption, the statement could be construed as misleading in light of the fact that the corporate exemption is not an automatic consequence of a particular business structure but must, instead, be applied for. If made, however, after ABC obtained the exemption, then the statement was absolutely true. Once it obtained the exemption, ABC was no longer legally obligated to carry workers' compensation insurance. ABC's petition alleged that the statement was made sometime in January 2007, but it does not further specify when, in January, the statement was allegedly made. If made before January 12, 2007 (when ABC obtained the exemption), it had the potential to mislead. If made, however, after January 12, 2007, it was true. Much of ABC's argument revolves around the fact that Ward allegedly gave this same advice to Martin in February or March 2006, but even assuming the truth of that allegation (as we must under our standard of review), Martin is not a party in this case; ABC was the plaintiff below, and ABC—as a corporation—did not exist until December 2006. Thus, we question whether any duty owed by Ward to ABC could even arise before ABC came into existence. But this is an issue we need not decide in this case.

**8.** Although ABC's petition raised four claims for relief, it did not base a challenge to the entry of summary judgment on its claim of failure to procure insurance.

of the speaker's failure to exercise reasonable care, the information was false; (3) the information was intentionally provided by the speaker for the guidance of limited persons in a particular business transaction; (4) the hearer justifiably relied on the information; and (5) due to the hearer's reliance on the information, the hearer suffered a pecuniary loss."). And when general negligence and breach of fiduciary duty claims are premised on the provision of allegedly false advice, demonstrating justifiable reliance on that advice is necessary for proof of causation.[9] *See Baldridge v. Lacks,* 883 S.W.2d 947, 954 (Mo. App. E.D.1994) (holding that, in the context of a legal malpractice claim premised on negligent advice, "[a]n explicit reliance element is unnecessary because it is implicitly included in the causation element of the traditional malpractice action"), *superseded on other grounds by Rule* 72.01, *as recognized in Pope v. Pope,* 179 S.W.3d 442, 455–56 (Mo.App. W.D.2005); *see also Hickey v. Travelers Ins. Co.,* 158 A.D.2d 112, 558 N.Y.S.2d 554, 556 (1990) ("Where the action is premised on negligent advice . . ., proof of detrimental reliance on the advice is, of course, necessary to establish causation."). Thus, as to all three claims challenged on appeal, an inability of ABC to prove justifiable reliance on the advice allegedly provided by Ward entitles Ward to summary judgment.

■ "The test of whether a plaintiff relied upon a misrepresentation is simply whether the representation was a material factor influencing final action." *Gros-*

*soehme v. Cordell,* 904 S.W.2d 392, 397 (Mo.App. W.D.1995). Because reliance is necessarily entwined with causation in claims pertaining to negligent advice, we briefly discuss the requirements for causation.

■ " 'But for' [causation] is an absolute minimum for causation because it is merely causation in fact." *Callahan v. Cardinal Glennon Hosp.,* 863 S.W.2d 852, 862 (Mo. banc 1993). "Any attempt to find liability absent actual causation is an attempt to connect the defendant with an injury or event that the defendant had nothing to do with." *Id.* "Mere logic and common sense dictates that there be some causal relationship between the defendant's conduct and the injury or event for which damages are sought." *Id.* In the context of reliance, but-for causation is established by the plaintiff's reliance in fact. Dan B. Dobbs, The Law of Torts § 474, at 1360 (2000). But bare reliance, alone, is not enough to prove that the misrepresentation was the proximate cause of the injury.

> Proximate cause requires something in addition to a 'but for' causation test because the but for' causation test serves only to exclude items that are not causal in fact; it will include items that are causal in fact but that would be unreasonable to base liability upon because they are too far removed from the ultimate injury or damage.

*Callahan,* 863 S.W.2d at 865. As it relates to reliance, proximate cause requires that the reliance be justifiable. *See* Dan B.

---

9. The elements of a general negligence claim are: " '(1) the existence of a duty to conform to a certain standard of conduct to protect others against unreasonable risks, (2) breach of the duty, (3) proximate cause, and (4) actual damages.' " *Ivey v. Nicholson–McBride,* 336 S.W.3d 155, 157 (Mo.App. W.D.2011) (quoting *Pyle v. Layton,* 189 S.W.3d 679, 682–83 (Mo.App. S.D.2006)). A claim of breach of

fiduciary duty requires the plaintiff to " 'establish that a fiduciary duty existed between it and the defending party, that the defending party breached the duty, and that the breach caused the [plaintiff] to suffer harm.' " *W. Blue Print Co., LLC v. Roberts,* 367 S.W.3d 7, 15 (Mo. banc 2012) (quoting *Zakibe v. Ahrens & McCarron, Inc.,* 28 S.W.3d 373, 381 (Mo. App. E.D.2000)).

Dobbs, The Law of Torts § 474, at 1359 (2000).

"Generally, whether a party has justifiably relied on a misrepresentation is an issue of fact for the jury to decide," *Renaissance Leasing*, 322 S.W.3d at 132, which would preclude the grant of summary judgment. *See* Rule 74.04(c)(6). "Despite the general rule[, however] . . ., a party who undertakes an independent investigation does not have the right to rely on the misrepresentations of another." *Renaissance Leasing*, 322 S.W.3d at 132. "[W]here a party makes his own independent investigation, he will be presumed to have been guided by what he learned and the conclusions he reached and will not be permitted to say that he relied on misrepresentations of another and that he was deceived thereby." *Consumers Coop. Ass'n v. McMahan*, 393 S.W.2d 552, 556 (Mo.1965).

Here, even assuming that ABC relied upon Ward's alleged advice, that reliance was no longer justifiable—as a matter of law—once ABC undertook its own investigation by contacting the Division and then learned what the law actually provided. The uncontroverted facts demonstrate that the information provided by the Division to ABC indicated that ABC needed to either maintain workers' compensation insurance or obtain an exemption. It was only after learning this information that ABC applied for and obtained the exemption. The fact that ABC did not have workers' compensation insurance at the time of Baker's injury was a result, not of Ward's alleged advice, but of ABC's own independent investigation and decision to seek an exemption from the Workers' Compensation Law.[10] Whether that decision was wise is not for us to determine. The law "is not an indulgent guardian which can go to romantic length of giving protection against consequences of indolence, folly or careless indifference to ordinary and accessible means of information." *Gooch v. Motors Ins. Co.*, 312 S.W.2d 605, 609 (Mo.App.1958).

ABC argues, essentially, that, because of Ward's alleged advice, it failed to fully appreciate the risk it was taking on by obtaining the exemption. But ABC's argument is still flawed as it relates to reliance insofar as the statement attributed to Ward does not mention either the possibility or the wisdom of seeking an exemption from the Workers' Compensation Law.[11] At best, the alleged statement indicates only that, because of its business structure, ABC was not legally required to obtain workers' compensation insurance; the statement contained no further advice—a fact apparently recognized by ABC in light of its claim that Ward *failed* to advise it of the risk inherent in not main-

---

10. At oral argument, ABC asserted that its investigation does not preclude reliance because it was only a partial investigation. "[T]here are three exceptions to the investigation rule," and one of those is if "the investigating party makes only a partial investigation and relies on both the results of the inspection and the misrepresentation...." *Renaissance Leasing*, 322 S.W.3d at 132. Here, ABC's investigation disclosed the very information that was the subject of Ward's alleged statement. Thus, while the investigation did not reveal everything there is to know about the Workers' Compensation Law, it did reveal sufficient information to preclude any further reliance by ABC on Ward's alleged statement, and we do not find the partial investigation exception applicable.

11. Ward had no duty to advise ABC of the wisdom of obtaining an exemption, as an insurance agent's duty does not include informing the insured about the advisability of obtaining coverage. *See Jones v. Kennedy*, 108 S.W.3d 203, 208 (Mo.App. S.D.2003) (finding that agent was under no duty "to inform [the insured] of the availability and advisability" of obtaining certain available coverage).

taining workers' compensation insurance. If Ward's statement contained any advice about risk, ABC would be claiming the advice to be incorrect rather than wholly absent. But, as ABC must recognize, the statement contained no information whatsoever about the inherent risk in exempting oneself from the Workers' Compensation Law. ABC is not entitled, as a matter of law, to rely on a statement that was never made.

Had ABC simply failed to obtain workers' compensation insurance, then the question of reliance would be a fact-bound one for a jury. But ABC conducted its own independent investigation into the legal requirements of the Workers' Compensation Law, determined that it qualified for an exemption, and apparently decided that obtaining an exemption was a reasonable option for its business. Therefore, ABC cannot, as a matter of law, demonstrate any justifiable reliance upon the statement attributed to Ward.

As the issue of reliance is dispositive of all of ABC's claims, we need not address its individual points on appeal.

### Conclusion

Because ABC cannot, as a matter of law, demonstrate any reasonable reliance upon the statement attributed to Ward, and because reasonable reliance is a necessary showing for each of the claims ABC raised below, the trial court committed no error in granting summary judgment in favor of Ward. The trial court's judgment is affirmed.

THOMAS H. NEWTON and LISA WHITE HARDWICK, Judges, concur.