# United States Court of Appeals
### For the Eighth Circuit

_____

No. 24-1808
_____

Lillian Louise Morgan Vogt

*Plaintiff - Appellant*

v.

Progressive Casualty Insurance Company

*Defendant - Appellee*
_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis
_____

Submitted: January 15, 2025
Filed: February 24, 2025
_____

Before LOKEN, ARNOLD, and KELLY, Circuit Judges.
_____

ARNOLD, Circuit Judge.

After Lillian Vogt purchased a used van from a dealer, she learned that the dealer had purchased the van from a representative of Progressive Casualty Insurance Company, which had classified the van as a total loss but had sold it with a clean title rather than a salvage title. Vogt thought Progressive had mistitled the van, so she brought fraud, negligent misrepresentation, negligence, and negligence per se claims against the company. She then moved to certify two classes of individuals who purchased and owned vehicles that Progressive

allegedly mistitled in the same way. The district court[1] denied certification of each class because it concluded that issues common to putative class members would not predominate over member-specific issues of reliance or causation. We granted Vogt leave to appeal, Fed. R. Civ. P. 23(f), and, because we agree with the district court, we now affirm.

Like the parties, we will assume that Missouri law governs the merits of the putative class members' claims. A Missouri statute defines five categories of motor vehicles that qualify as salvage vehicles. Mo. Rev. Stat. § 301.010(55). The vehicles the putative class members purchased allegedly belong to two of these categories: one encompassing recent model year vehicles that sustained damage over a statutory cost threshold, *id.* § 301.010(55)(a), and one encompassing vehicles declared salvage by an insurance company because of the settlement of a claim, *id.* § 301.010(55)(c). A salvage title, in turn, is proof of ownership of a salvage vehicle. *Id.* § 301.217.1(2). When a "vehicle is sold for salvage, dismantling or rebuilding," the purchaser generally must apply to Missouri's Director of Revenue for a salvage title, which the Director of Revenue must issue. *Id.* § 301.227.1.

Salvage titles come with restrictions, two of which, though partially disputed, are relevant here. First, Vogt contends that owners of salvage-titled vehicles cannot drive them because a salvage title is not "acceptable for the purpose of registering a motor vehicle." *Id.* § 301.217.1(2). While it is still possible to rebuild such vehicles for use on the roads, *see id.* §§ 301.190.9, 307.380.2; *Baugus v. Dir. of Revenue*, 878 S.W.2d 39, 42 (Mo. banc 1994), we will assume that their owners otherwise cannot drive them, *see O'Brien v. B.L.C. Ins. Co.*, 768 S.W.2d 64, 73 (Mo. banc 1989) (Robertson, J., dissenting). Second, Vogt asserts that individual owners, like the putative class members, cannot resell

---

[1]The Honorable Stephen R. Clark, Chief Judge, United States District Court for the Eastern District of Missouri.

salvage-titled vehicles. Though perhaps an exaggeration, we will assume this is true as well.

With this titling framework in mind, we review the district court's interlocutory denial of class certification for abuse of discretion. *Perras v. H & R Block*, 789 F.3d 914, 916 (8th Cir. 2015). Vogt moved for class certification under Federal Rule of Civil Procedure 23(b)(3), so she had to show, among other things, that "questions of law or fact common to class members predominate over any questions affecting only individual members." *See Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013). We think she failed to do so.

Start with the putative classes' fraud and negligent misrepresentation claims. Because both are nondisclosure claims, they require proof that Progressive was silent despite a legal duty to speak, that its silence was misleading, and that the putative class members suffered injuries because they rightfully relied on its silence. *See Top Priority Transit, LLC v. Cape Auto Pool, Inc.*, 680 S.W.3d 536, 544 (Mo. Ct. App. 2023); *Duncan v. Savannah, LLC*, 637 S.W.3d 633, 638–39 (Mo. Ct. App. 2021). Vogt contends that Progressive had a duty to apply for salvage titles for vehicles it bought "for salvage, dismantling or rebuilding," Mo. Rev. Stat. § 301.227.1, and that its failure to do so before reselling them was silence that misled the putative class members when they purchased some of the vehicles downstream. *See Parke v. Progressive Cas. Ins. Co.*, 613 S.W.3d 428, 431–32 (Mo. Ct. App. 2020). The result, according to Vogt, is that the putative class members acquired vehicles that had clean titles but remained subject to the same restrictions as salvage-titled vehicles. If Progressive had submitted the required salvage title applications, the putative class members purportedly would have realized these restrictions applied and declined to purchase the vehicles at the prices they paid.

Whatever the merits of these claims, this last element makes them unsuitable for class treatment. Whether putative class members relied on the

absence of salvage title applications when they bought their vehicles is a member-specific question over which common questions do not predominate. It may be, as Vogt contends, that some putative class members bought their vehicles because they understood the absence of applications to mean that the vehicles were free of salvage title restrictions. But other putative class members may have been satisfied with their purchases even if those restrictions applied. Such vehicles, after all, have value. Their purchasers can rebuild them, *see* Mo. Rev. Stat. §§ 301.190.9; 307.380.2; *Baugus*, 878 S.W.2d at 42, or they can harvest their parts, *see* Mo. Rev. Stat. § 301.227.2. Litigating the fraud and negligent misrepresentation claims would therefore require individualized inquiries into the reasons for each putative class member's purchase. Even if other disputed issues could be decided by reference to common evidence, those inquiries would largely defeat the purpose of a class proceeding. *See Johannessohn v. Polaris Indus. Inc.*, 9 F.4th 981, 985 (8th Cir. 2021).

We do not agree with Vogt that a jury could infer each putative class member's reliance from the fact that she purchased her vehicle. Some transactions, it is true, may be unlikely to occur in the absence of one party's reliance on its counterparty's misrepresentations or misleading omissions. If a transaction is unlikely enough, a jury may even infer the party's reliance from the transaction's occurrence. And when many individuals engage in similar transactions of this type, they may be able to prove their reliance from the common circumstances of the transactions, in which case their certification as a class may be appropriate. *See In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 119–20 (2d Cir. 2013); *cf. Custom Hair Designs by Sandy, LLC v. Cent. Payment Co.*, 984 F.3d 595, 599–600, 604 (8th Cir. 2020). But this logic is inapplicable here. Because vehicles subject to salvage title restrictions have value, their purchase is not unlikely in the absence of reliance on a misrepresentation or omission. Things might be different if the putative class members paid non-salvage prices for their vehicles; a vehicle free from salvage title restrictions should command a higher price than one subject

to them. *Cf. O'Brien*, 768 S.W.2d at 67. Vogt, however, presents no evidence of the prices other putative class members paid. Nor could a jury infer that the putative class members paid non-salvage prices from evidence common to them. So far as the record reveals, the putative class members did not specifically contract for vehicles free of salvage title restrictions. *Cf. Custom Hair Designs*, 984 F.3d at 599. And, judging by the report for Vogt's van, at least some putative class members could have obtained vehicle history reports and learned that their vehicles were "salvage," though not salvage-titled. Assuming Vogt is right that the purchaser of a salvage vehicle must seek a salvage title for the vehicle, it would be a stretch to assume that the sellers of the vehicles described in these reports charged a non-salvage premium.

For much the same reasons, the putative class members' negligence and negligence per se claims are poor candidates for class litigation. Those claims do not formally require proof of reliance, but they do require proof of causation. *See Lafarge N. Am., Inc. v. Discovery Grp. L.L.C.*, 574 F.3d 973, 984 (8th Cir. 2009); *Williams v. Bayer Corp.*, 541 S.W.3d 594, 606 (Mo. Ct. App. 2017). And that entails proof of reliance here. To see why, consider Vogt's theory of negligence. She asserts that Progressive was negligent, or negligent per se, because it failed to apply for salvage titles for the putative class members' vehicles. Had it done so, she maintains, the putative class members would not have purchased the vehicles at the prices they paid. It follows that the putative class members cannot prove causation without proving reliance; if the absence of salvage title applications would not have changed their purchasing decisions, then it could not have caused the harm of mistaken purchases. *See In re St. Jude Med., Inc.*, 522 F.3d 836, 839 (8th Cir. 2008); *cf. ABC Seamless Siding & Windows, Inc. v. Ward*, 398 S.W.3d 27, 35 (Mo. Ct. App. 2013). Litigating their negligence and negligence per se claims, like litigating their fraud and negligent misrepresentations claims, would thus require an individualized look at each putative class member's reasons for her vehicle purchase to see if she relied on Progressive's failure to apply for a salvage

title. As we have said, that sort of member-specific inquiry is ill-suited to a class proceeding. The district court therefore did not abuse its discretion in denying class certification.

Affirmed.

_____