SHELTER MUTUAL INSURANCE
COMPANY, Respondent,

v.

Glen Eugene BALLEW, Diana Rose
Ballew, Christopher Robles and
Georgetta Robles, Appellants.

Nos. WD 65618, WD 65650.

Missouri Court of Appeals,
Western District.

Oct. 24, 2006.

Nikki Cannezzaro, John L. Mullen, Kansas City, MO, for respondent.

Margaret E. Dean, Kansas City, MO, for appellants Ballew.

William G. Cownie, Lee's Summit, MO, for appellants Robles.

Before HOWARD, P.J., and ELLIS and HARDWICK, JJ.

VICTOR C. HOWARD, Presiding Judge.

Glenn and Diana Ballew ("Ballews") and Christopher and Georgetta Robles ("Robleses") appeal the Circuit Court of Cass

County's grant of summary judgment in favor of Shelter Mutual Insurance Company ("Shelter"). The sole issue on appeal is whether the trial court erred in granting Shelter's Motion for Summary Judgment based on its finding that the "property owned by an insured" exclusion applied. We hold that Shelter did not have a duty to defend or indemnify the Ballews.

## Factual and Procedural Background

On December 5, 2000, the Ballews entered into a contract to sell their home to the Robleses. After purchasing the residence, the Robleses discovered a number of deficiencies with the home and on July 8, 2002, filed suit in the Circuit Court of Cass County against the Ballews ("underlying action"), alleging five separate counts, including a claim for negligent misrepresentation.[1] The Ballews tendered the defense of the underlying action to Shelter based on their Homeowner's Policy and their Personal Umbrella Policy (collectively referred to as "policies").[2] Subsequently, Shelter filed a Petition for Declaratory Judgment, asserting that based on the allegations contained in the underlying action, it did not have a duty to defend or indemnify the Ballews under the terms of either of the policies. Shelter moved for Summary Judgment on the issue of coverage. Based on the Ballews' response to Shelter's Motion for Summary Judgment,[3] the only remaining issue for the trial court to determine was whether the Homeowner's Policy and/or the Personal Umbrella Policy issued by Shelter to the Ballews provided coverage for the negligent misrepresentation claim in the underlying action.

The trial court granted Shelter's Motion for Summary Judgment, finding that the coverage was expressly excluded by the "property owned by an insured" exclusion in both policies. The trial court found that the negligent misrepresentation claim asserted by the Robleses in the underlying action was one for property damage to property owned by an insured, and, thus, based on the express language of the policies, Shelter had no duty to defend or indemnify the Ballews.

## Standard of Review

Appellate review of summary judgment is de novo, with no deference given to the trial court's ruling. *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). Pursuant to Rule 74.04(c)(6), "[s]ummary judgment is appropriate when there are no genuine issues of material fact, and the movant is entitled to judgment as a matter of law." *Johnson v. Mo. Dep't of Corr.*, 166 S.W.3d 110, 111 (Mo.App. W.D.2005). A court-tried declaratory judgment action involving the "interpretation of an insurance policy is a question of law, and the trial court receives no deference." *Auto. Club Inter–Ins. Exch. v. Medrano*, 83 S.W.3d 632, 637 (Mo.App. E.D.2002).

## Discussion

■ The sole issue on appeal is whether the trial court erred in granting Shelter's

1. Case No. CV102–702CC. The other allegations include: breach of contract, violation of Missouri Merchandising Practices Act, false promises and representations, breach of express warranty and providing false information regarding defects. The Ballews have conceded that these other claims are not covered by their insurance policies.

2. The Ballews also have a Commercial General Liability Policy with Shelter, but have conceded that it does not provide coverage for the underlying action.

3. The Robleses failed to file a timely response to the Motion for Summary Judgment, so the only relevant response is that of the Ballews.

Motion for Summary Judgment based on its finding that the "property owned by an insured" exclusion applied and, therefore, Shelter did not have a duty to defend or indemnify the Ballews.

■ An insurer's duty to defend is based on the allegations of an underlying action and the terms of the insurance policy. *Citizens Ins. Co. of Am. v. Leiendecker*, 962 S.W.2d 446, 450 (Mo.App. E.D. 1998). Whether an underlying petition has alleged a claim that is covered by the terms of the insurance policy is a legal question, which is not dependent on a factual determination of the underlying claims. *Id.*[4]

■ Even though it is an insurer that brings a declaratory judgment action, the insured has the burden of proving that the underlying action is covered by the insurance policy. *Auto. Club Inter–Ins. Exch. v. Medrano*, 83 S.W.3d 632, 638 (Mo.App.

E.D.2002). The insurer bears the burden of establishing that an exclusion to coverage applies. *Id.*

In the underlying action, the Robleses allege negligent misrepresentation. In their petition, they pray for judgment in their favor in the form of property damages, specifically the cost of repairs. The Ballews argue that a duty to defend arises under the Homeowner's Policy based on the "Comprehensive Personal Liability Protection" section[5] and under the Personal Umbrella Policy based on the "Personal Liability" coverage,[6] which defines a personal injury to include "misrepresentation."[7] They claim both of these provisions obligate Shelter to defend the Ballews in claims for "property damage," such as the Robleses have alleged in their petition in the underlying action.

Shelter responds to these arguments by pointing to the "property owned" exclu-

---

4. "In Missouri, the duty to defend is broader than the duty to indemnify." *Lampert v. State Farm Fire & Cas. Co.*, 85 S.W.3d 90, 93 (Mo. App. E.D.2002) (citing *McCormack Baron Mgt. Servs., Inc. v. Am. Guarantee & Liab. Ins.Co.*, 989 S.W.2d 168, 170 (Mo. banc 1999)). An insurer's duty to pay only arises if the third party is successful in the underlying action. In this case, a claim for indemnity is not ripe for ruling at this time since the underlying action has not yet been resolved. However, "[w]here there is no duty to defend, there is no duty to indemnify." *Am. States Ins. Co. v. Herman C. Kempker Constr. Co.*, 71 S.W.3d 232, 236 (Mo.App. W.D.2002). Therefore, since we find that Shelter does not have a duty to defend the Ballews in the underlying action, neither will it have a duty to indemnify.

5. The relevant language of this provision provides:

 **COVERAGE E—PERSONAL LIABILITY**
 **We** will pay all sums arising out of any one loss which an **insured** becomes legally obligated to pay as damages because of **bodily injury** or **property damage** and

caused by an occurrence covered by this policy. If a claim is made or suit is brought against the **insured** for liability under this coverage we will defend the **insured** at **our** expense, using lawyers of our choice.

6. The relevant language of this provision provides:

 **We** will pay in excess of the **retained limit** the **net loss** which the **insured** is legally obligated to pay as damages. The damages must result from **personal injury** or **property damage** which occurs during the policy period anywhere in the world.
 **DEFENSE–SETTLEMENT**
 If a claim is made or a suit is brought against an **insured** for **personal injury** or **property damage** covered by this policy, **we** will defend the **insured** at **our** expense, using lawyers of **our** choice, unless there is underlying insurance or other applicable insurance.

7. "Personal injury" is defined to include: "c. libel; slander; misrepresentation; humiliation; defamation of character; invasion of rights of privacy."

sions found in both policies.[8] In both of the policies, the express language excludes coverage of "property damage" to "property owned by an insured." In the underlying action, the Robleses have prayed for such property damage, the cost of repairs. The question then becomes whether the property damage is "to property owned by an insured," the Ballews. To answer this question, what the Robleses are alleging must be considered.

In the underlying action, the Robleses allege that during the sale of the home: the Ballews represented to them that the residence was free of defects; that these representations were false; that the Robleses relied on the representations of the Ballews; and as a result, suffered damages "in the form of necessary repairs to their home."[9] Implicit in these allegations is the fact that these defects existed prior to the sale of the home to the Robleses. The type of negligence that is claimed in the underlying action is that which would have had to occur while the Ballews owned the property. *See generally Wickner v. Am. Reliance Ins. Co.*, 141 N.J. 392, 661 A.2d 1256 (1995). Otherwise, there would have been no false representations. Thus, it was property damage to property owned by the Ballews that gave rise to this cause of action.

As previously mentioned, whether an underlying petition has alleged a claim that is covered by the terms of the insurance policy is not dependent on a factual determination of the underlying claims, it is a legal question to be determined based on the allegations contained in the petition. *See Leiendecker*, 962 S.W.2d at 450. The Ballews argue that the specific damage the Robleses complain of did not occur until after the sale had been completed. This is irrelevant. Whether, in fact, damage occurred to the property before or after the sale is a question to be determined in the underlying action and is not the subject of this declaratory judgment action.[10]

The Ballews contend that the "property owned" exclusion should not apply in this case. They first argue that because the exclusion is in regard to "property damage" and not "personal injury," it does not apply to the negligent misrepresentation claim. In support of this argument, they cite the California Court of Appeals case

8. The Homeowner's policy states: "Under Personal Liability, **we** do not cover.... 2. **property damage** to property owned by an **insured**." The Personal Umbrella policy states: "**We** do not cover:.... 2. **Property damage** to: a. property owned by an **insured**[.]"

9. In order to prove negligent misrepresentation, a plaintiff must show:

(1) that defendant supplied information in the course of his business or because of some other pecuniary interest; (2) that because of a failure by defendant to exercise reasonable care or competence, the information was false; (3) that the information was intentionally provided by defendant for the guidance of a limited group, including plaintiffs, in a particular business transaction; and (4) that in relying on the information, plaintiffs suffered a pecuniary loss.

*Chubb Group of Ins. Cos. v. C.F. Murphy & Assocs., Inc.*, 656 S.W.2d 766, 783–84 (Mo. App. W.D.1983).

10. In their brief, the Robleses argue that there is a genuine issue of material fact regarding the Ballews' state of mind and, therefore, Shelter was not entitled to summary judgment. This, like the question regarding when the damage occurred, is irrelevant to the determination of whether Shelter has a duty to defend. Whether an underlying action alleges a claim that is covered by a term in an insurance policy is a legal question and is not dependent on a factual determination of an element of the underlying action. *See Citizens Ins. Co. of Am. v. Leiendecker*, 962 S.W.2d 446, 450. The Ballews' state of mind only is relevant to the determination of the negligent misrepresentation claim, not to whether Shelter has a duty to defend based on the language of the policies.

*General Accident Insurance Company v. West American Insurance Company,* for the holding that "[u]nlike liability coverage for property damage or bodily injury, personal injury coverage is not based on an accidental occurrence. Rather, it is triggered by one of the offenses listed in the policy." 42 Cal.App.4th 95, 49 Cal.Rptr.2d 603, 606 (1996).

In this case, the Ballews are attempting to use the way the Robleses labeled their allegations in the underlying action to avoid the exclusion. In doing this, they are relying on the distinction in the Personal Umbrella Policy between "property damage" and "personal injury," which by definition in the policy includes "misrepresentation." However, what they fail to recognize is, regardless of what the Robleses title their cause of action, what they are praying for is ultimately property damages, i.e., the cost of repairs. The Personal Umbrella Policy explicitly states that it will pay "damages," which **"result from personal injury or property damage."** (Emphasis added.) However, as discussed more fully above, there is an exclusion to "property damage to property owned by an insured." The Ballews are confusing what can cause the damage—a personal injury, such as misrepresentation—with the damage itself, in this case, the cost of repairs, which is property damage. This property damage is excluded from coverage under the Personal Umbrella Policy because it was damage to "property owned by an insured" as discussed above. Therefore, regardless of what type of claim the Robleses bring, ultimately it is for "property damage to property owned by an insured" and is excluded from coverage. This point is denied.

 In their second point, the Ballews argue that the "property owned" exclusion should not apply because it is ambiguous. "An ambiguity arises when there is duplicity, indistinctness, or uncertainty in the meaning of words used in the contract." *Krombach v. Mayflower Ins. Co.,* 827 S.W.2d 208, 210 (Mo. banc 1992). The language "will be viewed in the meaning that would ordinarily be understood by the layman who bought and paid for the policy." *Id.* A phrase is not read in isolation; instead, the policy is read as a whole. *Leiendecker,* 962 S.W.2d at 451.

 When a policy is found to be ambiguous, it will be construed against the insurer. *Krombach,* 827 S.W.2d at 210. If a policy is found unambiguous, the rules of construction will not be applied and absent public policy to the contrary, the policy is enforced as written. *Id.* We "will not create an ambiguity in order to distort the language of an unambiguous insurance policy." *Id.* The fact there is disagreement between the parties as to the interpretation of a policy does not create ambiguity. *J.E. Hathman, Inc. v. Sigma Alpha Epsilon Club,* 491 S.W.2d 261, 264 (Mo. banc 1973).

 "In interpreting whether the language used in the policy is ambiguous, we give words the meaning that would normally be understood by the average lay person, unless it plainly appears that the technical meaning is intended." *Leiendecker,* 962 S.W.2d at 451. To determine the common meaning of a term, a court may look to a dictionary definition. *Id.* at 453.

We find that the language of the Homeowner's Policy and the Personal Umbrella Policy is unambiguous. The Ballews contend that the phrase "owned property" is ambiguous because it does not specify the time at which the property must be damaged to be excluded from coverage. However, the word "owned" itself unambiguously delineates when the property damage is excluded. WEBSTER'S THIRD

NEW INTERNATIONAL DICTIONARY 1612 (1993) defines "owned" as an adjective meaning "held as one's own possession." In this case, as discussed above, in order for there to be a claim for "negligent misrepresentation," the damage complained of must have existed at the time of the sale. Therefore, the property would have been in the Ballews' possession and covered by the "property owned exclusion." Furthermore, BLACK'S LAW DICTIONARY 606 (8th ed.2004) defines the "owned-property exclusion" as:

> A provision in a comprehensive general liability insurance policy allowing only third parties who are injured on or by the insured's property to make liability claims against the insurer. The provision ordinarily excludes coverage for (1) property owned, rented, occupied, sold, given away, or abandoned by the insured, (2) personal property in the care, custody, or control of the insured, and (3) property located where the insured and its employees work.

(Term: "exclusion.") Clearly, the property damage claimed by the Robleses would be covered under the exclusion included in both polices. This point is denied.

The Robleses also contend that the phrase "owned property" is ambiguous because Shelter gives coverage for misrepresentation in one section of the policy and then attempts to exclude it in another. If we were to adopt this argument, then no insurance policy could ever contain exclusions. "An exclusion provision in an insurance policy, by definition, excludes risk. It has no function to endow coverage but rather limits the obligation of indemnity." *Harold S. Schwartz & Assocs., Inc. v. Cont'l Cas. Co.*, 705 S.W.2d 494, 498 (Mo. App. E.D.1985). This point is denied.

In finding that the "property owned by an insured" exclusion applies in this case, we note:

If the policy exclusions were found not to apply in this context, than we would be providing insureds with more insurance protection for having sold their property than would be attributable to them during the time they owned that property. That interpretation can be neither derived from the language of the policy, reasonably inferred from the intentions of the parties, nor imputed as their reasonable expectations.

*Wickner v. Am. Reliance Ins. Co.*, 141 N.J. 392, 661 A.2d 1256, 1259. To find otherwise would allow an insured to make a misrepresentation in the process of selling property, make a profit from the sale, and then force their insurance company to pay for the damages their misrepresentation caused the buyer. This clearly was not the intent of Shelter or the Ballews and, therefore, is an improper interpretation of the policies.

## Conclusion

In conclusion, we hold that the "property owned by an insured" exclusion applies and, therefore, there is no coverage under either policy in regards to the underlying action.

For the above reasons, the judgment of the trial court is affirmed.

ELLIS and HARDWICK, JJ., concur.