# United States Court of Appeals

## For the Eighth Circuit

_____

No. 12-2243

_____

Craig Payne; Carroll Payne

*Plaintiffs - Appellants*

v.

Grinnell Mutual Reinsurance Company

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Eastern District of Missouri - Hannibal

_____

Submitted: March 13, 2013
Filed: June 6, 2013

_____

Before MURPHY, SMITH, and GRUENDER, Circuit Judges.

_____

GRUENDER, Circuit Judge.

Appellant home-buyers Craig and Carroll Payne ("the Paynes") appeal the district court's[1] grant of summary judgment to Grinnell Mutual Reinsurance Company ("Grinnell") on the Paynes' claim for equitable garnishment of a personal liability

---

[1] The Honorable Jean C. Hamilton, United States District Judge for the Eastern District of Missouri.

insurance policy issued to the sellers of the home. For the reasons discussed below, we affirm.

On March 24, 2007, the Paynes contracted to purchase a home from Christopher and Jennifer Brandow ("the Brandows"). The Brandows had provided a seller's disclosure statement for the property to the Paynes on March 21. The disclosure statement made certain representations about the condition of the home. The sale closed on May 1, 2007, and the Paynes have resided in the home since that date. After the Paynes took possession of the home, they discovered pre-existing structural problems not listed on the disclosure statement, including cracks in the foundation walls and basement floors, buckling and warping of the roof, wrinkles and cracks in certain areas of drywall, and sloping floors. According to the Paynes, this damage was caused over time by expanding and contracting soil around the foundation, which in turn was caused by the Brandows' failure to provide adequate site drainage when they built the home.

In July 2009, the Paynes filed suit against the Brandows in Missouri state court, alleging fraudulent and negligent misrepresentation, fraudulent concealment, and violation of the Missouri Merchandising Practices Act ("the underlying suit").[2] As damages for each count, the Paynes alleged a diminution of the fair market value of the home as compared to their purchase price, plus repair costs. At the time the home was sold, the Brandows were covered by a personal liability insurance policy issued by the Farmers & Laborers Co-Op Insurance Association and backed by Grinnell. The relevant provisions of the policy are as follows:

---

[2]The underlying suit also included counts against a home inspector hired by the Paynes. The inspector settled with the Paynes for $40,000.

**DEFINITIONS**

**B.** In addition, certain words and phrases are defined as follows:

* * *

8. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in:

    * * *

    b. "Property damage".

* * *

10. "Property damage" means physical injury to or destruction of tangible property. "Property damage" does not include loss of use unless the property has been physically injured or destroyed.

* * *

**COVERAGES**

**A.**     **Coverage E – Liability To Public**

Subject to the liability limits and the terms of this policy, we will pay compensatory damages for which an "insured" becomes legally liable as a result of ... "property damage" caused by an "occurrence" to which this coverage applies.

* * *

**EXCLUSIONS**

**A.**     **Under Any Of The Coverages**

\* \* \*

20. We do not cover "property damage" to property owned by any "insured".

\* \* \*

25. We do not cover "property damage" to premises you sell, give away, or abandon if the "property damage" arises out of any part of those premises.

**B.    Additional Exclusions Under Coverage E – Liability To Public**

1. We do not cover "property damage" to property occupied or used by any "insured" or rented to or in the care of any "insured".

2. We do not cover "property damage" to property owned by, rented to, or leased to persons living in the household of an "insured".

In June 2010, Grinnell agreed to defend the Brandows in the underlying suit, subject to a reservation of its right to later deny coverage for the Paynes' claims. In December 2010, the Brandows settled the underlying suit by paying $5,000 and agreeing to a consent judgment of $100,000 in exchange for the Paynes' agreement not to execute that judgment against the Brandows. The Paynes subsequently filed this equitable garnishment action against Grinnell in Missouri state court to collect on the judgment. After Grinnell removed the action to federal district court, the district court granted summary judgment in favor of Grinnell, ruling that the underlying suit did not allege "property damage" as required to garnish the policy under Missouri law.

"Summary judgment is appropriate when, viewing the facts in the light most favorable to the non-movant, there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law." *Raines v. Safeco Ins. Co. of Am.*,

-4-

637 F.3d 872, 874 (8th Cir. 2011) (quoting *Sipe v. Workhorse Custom Chassis, LLC*, 572 F.3d 525, 528 (8th Cir. 2009)). "We review a district court's grant of summary judgment *de novo*, including its interpretation of state law." *Id.* at 875. The parties agree that Missouri law governs in this diversity action. In construing Missouri law, we must attempt to predict what the Supreme Court of Missouri would decide if it were to address the issue. *See id.* Under Missouri law, "clear and unambiguous language in an insurance policy should be given its plain meaning." *St. Paul Fire & Marine Ins. Co. v. Lippincott*, 287 F.3d 703, 705 (8th Cir. 2002) (citing *Killian v. Tharp*, 919 S.W.2d 19, 21 (Mo. Ct. App. 1996)).

As applicable here, Missouri law provides for the equitable garnishment of an insurance policy by a judgment creditor in the following circumstances:

> Upon the recovery of a final judgment against any person . . . for . . . damage to property if the defendant in such action was insured against said loss or damage at the time when the right of action arose, the judgment creditor shall be entitled to have the insurance money, provided for in the contract of insurance between the insurance company . . . and the defendant, applied to the satisfaction of the judgment, and if the judgment is not satisfied within thirty days after the date when it is rendered, the judgment creditor may proceed in equity against the defendant and the insurance company to reach and apply the insurance money to the satisfaction of the judgment.

Mo. Rev. Stat. § 379.200. Thus, section 379.200 provides a means by which "an injured party can seek recovery against a tortfeasor's insurer." *Carroll v. Mo. Intergovernmental Risk Mgmt. Ass'n*, 181 S.W.3d 123, 126 (Mo. Ct. App. 2005). In a suit for equitable garnishment, the injured party "'stands in the shoes of the insured, and his rights are no greater and no less than the insured's would have been in an action between the insured and the insurer' on the policy." *Id.* (quoting *Meyers v. Smith*, 375 S.W.2d 9, 15 (Mo. 1964)).

The Paynes argue that, under Missouri law, the Brandows' misrepresentation qualified under the policy as a covered occurrence. *Cf. Wood v. Safeco Ins. Co. of Am.*, 980 S.W.2d 43, 52 (Mo. Ct. App. 1998) ("[A] negligent misrepresentation claim is covered by a liability insurance policy providing coverage for an 'occurrence' defined as an 'accident.'"). Even if the misrepresentation was a covered occurrence, however, the policy provides coverage only for property damage *caused* by the occurrence. As the district court recognized, we already have interpreted Missouri law to hold under a similar policy that "there is no 'property damage' unless and until the [occurrence causes] 'physical injury to tangible property.'" *Lippincott*, 287 F.3d at 705 (quoting *Esicorp, Inc. v. Liberty Mut. Ins. Co.*, 266 F.3d 859, 862-63 & n.2 (8th Cir. 2001)). The Paynes do not direct us to, and we are not aware of, any subsequent Missouri authority suggesting otherwise. Here, as in *Lippincott*, the Brandows' misrepresentations, omissions, and concealments "did not cause any property damage to the house. . . . The structural flaws in the house constitute tangible property damage, but these flaws predate the occurrence of concealments and misrepresentations by which the [Brandows] incurred liability." *Id.* at 706. While the underlying "judgment covered the intangible losses incurred when the [Paynes] relied to their economic detriment upon the [Brandows'] misrepresentations," *id.*, there is no applicable coverage from the Grinnell policy in the absence of property damage caused by the asserted occurrence.

The Paynes alternatively argue that they are entitled to collect on the Brandows' policy because the underlying structural damage to the home was caused by expanding and contracting soil, which they assert to be a covered occurrence under the policy. To the extent, if any, that the judgment in the underlying suit could be characterized under Missouri law as a judgment for "damage to property," *see* § 379.200, equitable garnishment nevertheless would be available only if the Brandows could have obtained coverage for that damage "'in an action between the insured and the insurer' on the policy." *Carroll*, 181 S.W.3d at 126 (quoting *Meyers*, 375 S.W.2d at 15). According to the Paynes' own allegations, the structural damage

occurred when the insured Brandows owned the property. The policy clearly and unambiguously excludes coverage for "'property damage' to property owned by any 'insured'" as well as damage to property sold by the insured. Thus, even if the Paynes are correct that the structural damage was caused by a covered occurrence, the damage nevertheless would be excluded from coverage by the policy. Given that the Brandows would have been unable to obtain coverage for a claim based on the occurrence asserted by the Paynes, this argument for equitable garnishment fails as well.[3]

For the foregoing reasons, we affirm the grant of summary judgment in favor of Grinnell.

_____

[3]The Paynes assert a similar theory with respect to another Grinnell insurance policy maintained by the Brandows, a "Farmate" policy with a "Commander Dwelling" endorsement. However, that policy clearly and unambiguously provides coverage to the Brandows for their own property losses, rather than coverage for liability to third parties.