

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

AMERICAN FAMILY MUTUAL )
INSURANCE COMPANY, )
          )
          Respondent, ) **WD82461**
v. )
          ) **OPINION FILED:**
          ) **February 4, 2020**
ROBERT M. SHARON, )
          )
          Appellant. )

**Appeal from the Circuit Court of Clay County, Missouri**
**The Honorable Shane T. Alexander, Judge**

**Before Division Four:** Karen King Mitchell, Chief Judge, and
Gary D. Witt and Edward R. Ardini, Jr., Judges

Robert Sharon appeals the judgment in favor of American Family Mutual Insurance Company declaring that there is no duty to defend or indemnify the insureds Gregory and Kristine Schwenzer against Sharon's underlying claims for negligent misrepresentation and violation of the Missouri Merchandising Practices Act (MMPA). Sharon raises five points on appeal. In his first point, he argues that the trial court erred in finding there was no coverage under the Schwenzers' Missouri Homeowners' Policy (the Policy) because his underlying claims against the Schwenzers constitute a covered "occurrence" under the terms of the Policy. For his remaining four points, Sharon argues that the court erred in concluding that his claims are subject to the following Policy

exclusions: (1) the owned-property exclusion (Point II); (2) the expected-or-intended exclusion (Point III); (3) the contractual-liability exclusion (Point IV); and (4) the punitive-damages exclusion (Point V). Because we find that part of Sharon's underlying claim may constitute an "occurrence" under the Policy and the cited exclusions are inapplicable, we conclude that American Family has a duty to provide the Schwenzers with a legal defense in Sharon's underlying suit, and we reverse and remand for further proceedings consistent with this opinion.

## Background

In November 2016, Sharon sued the Schwenzers for, among other things, negligent misrepresentation and unlawful merchandising practices in connection with Sharon's purchase of the Schwenzers' home in Lawson, Missouri (the Property).[1] The sale closed on May 15, 2016. According to his petition, "shortly after taking possession [of the home], [Sharon] experienced significant water leaks and water damage in the basement."

Sharon's petition alleges that, in the Seller's Disclosure and Condition of Property Addendum to the sales contract (the Disclosure), the Schwenzers "agreed to disclose all material defects, conditions and facts know to [them] which would materially affect the value of the . . . Property." The petition alleges that "in response to question 7(d) on the . . . Disclosure, [the Schwenzers] represented that there had not been any water leakage or dampness in the house, crawl space or basement of the . . . Property[,]" and "in response to question[] 15(e) of the . . . Disclosure, [the Schwenzers] represented that there were not any other conditions that may materially affect the value or desirability of the . . . Property." The petition further alleges that these representations "were false, in that [the Schwenzers] had previously experienced water leaks and water damage in the basement of the . . . Property and had made repairs in an attempt to correct

---

[1] Sharon's petition also includes claims for breach of contract and fraudulent misrepresentation, but those claims are not part of this appeal.

2

said issue[,]" and the Schwenzers "knew or should have known that their representations to [Sharon] were false as [the Schwenzers] had previously experienced water leaks and water damage in the basement of the . . . Property." According to the petition, Sharon relied on the Schwenzers' representations "in deciding to purchase the . . . Property," the Schwenzers intended that Sharon rely on their representations "in deciding to purchase the . . . Property," and, "had the condition of the . . . Property been accurately represented to [Sharon, he] would not have purchased the . . . Property." Also according to the petition, "the value of the . . . Property in its 'real' condition at the time of closing was less than the value of the [P]roperty as represented by [the Schwenzers]," and Sharon "estimates the cost of repairing 'said issue' will be approximately . . . $49,115.00."

In addition, with respect to his negligent misrepresentation claim specifically, the petition alleges that Sharon "rel[ied] and was justified in relying on the information provided by [the Schwenzers] regarding the condition of the . . . Property and the existence of water leaks and prior water damage within the basement of the . . . Property," and, "as a direct and proximate result of [their] negligent misrepresentations to [him, Sharon] has incurred and will continue to incur damages in the form of repair costs and the diminished value of the . . . Property."

In terms of his unlawful merchandising practices claim, Sharon also alleges that the Schwenzers "used and engaged in acts of deception, fraud, false pretense, false promise, misrepresentation, unfair practice, concealment, suppression and omission of material facts before and during the sale of the . . . Property to [Sharon]," and "[s]pecifically [he] has incurred significant costs to remove, repair and replace portions of the basement of the . . . Property that were damaged by water during [the Schwenzers'] occupancy of the . . . Property."

American Family issued the Policy to the Schwenzers for the Property between the effective dates of December 28, 2014, and May 20, 2015. In pertinent part, the Policy provides

3

personal liability coverage as follows: "We will pay, up to our limit, compensatory damages for which any insured is legally liable because of bodily injury or property damage caused by an occurrence covered by this policy." The Policy includes the following relevant definitions:

6.  Insured Premises

    a.  Described Location:

        (1) if you own the one or two family dwelling described in the Declarations, the Insured premises means: that dwelling, related private structures and grounds at that location where you reside;
        . . . .

    b.  For Personal Liability . . . Coverage[], Insured premises also include:

        (1) other premises listed in the Declarations[.][2]
. . . .

9.  Occurrence means an accident, including exposure to conditions, which results during the policy period, in . . . property damage. Continuous or repeated exposure to substantially the same general harmful conditions is considered to be one occurrence.
. . . .

11. Property Damage means physical damage to or destruction of tangible property, including loss of use of this property. Loss of use of tangible property does not include any resulting loss of value of such damaged property.

Relevant Policy exclusions include the following:

Coverage D – Personal Liability does not apply to:

1.  Contractual Liability. We will not cover personal liability under any contract or agreement.

    This exclusion does not apply to written contracts:

    a.  directly relating to the ownership, maintenance or use of the Insured premises not excluded . . . elsewhere in this policy; or

    b.  in which the insured assumes the liability of others prior to the occurrence.
    . . . .

---

[2] The Property is listed in the Policy's Declarations.

4

3. Property Owned or Controlled.  We will not cover property damage to:

   a.   property owned by any insured;

   b.  property borrowed, used or occupied by, rented to or in the care of any insured[.]

Finally, a Missouri Amendatory Homeowners Endorsement to the Policy includes the following exclusions to the personal liability coverage:

> Expected or Intended.  We will not cover . . . property damage arising out of an expected or intended act or omission.
>
> a.  This includes any type of . . . property damage that an insured:
>    (1) intends; or
>    (2) may expect to result from any intentional act or omission.
>
> b.  This exclusion applies even if the . . . property damage is:
>    (1) of a different kind, quality, or degree than intended;
>    (2) to a different person or property than intended;
>    . . .
>    (4) unexpected or unforeseen by the person injured or the owner of the property damaged . . .
> . . . .
>
> c.  This exclusion applies regardless of the theory of relief pursued, asserted, or claimed by anyone seeking compensation under this policy.[3]
> . . . .
>
> Punitive, Statutorily[-]Imposed, or Court[-]Ordered Damages.  We will not cover . . . punitive, statutorily[-]imposed, or court[-]ordered damages.  This includes any Personal Liability for:
>
> a. punitive, exemplary, statutorily[-]imposed, multiple, or aggravated damages;
>  . . .
>
> c. awarded or statutorily[-]mandated attorney fees related to a. . . . above.[4]

---

[3] The Missouri Amendatory Homeowners Endorsement substitutes this "expected or intended" exclusion for the "Intentional, Expected, or [I]ntended injuries" exclusion referenced elsewhere in the Policy and by the parties in their briefs.

[4] The Missouri Amendatory Homeowners Endorsement substitutes this "Punitive, Statutorily[-]Imposed, or Court[-]Ordered Damages" exclusion for the "Punitive damages" exclusion referenced elsewhere in the Policy and by the parties in their briefs.

Under the terms of the Policy, the Schwenzers tendered defense of Sharon's lawsuit to American Family and sought indemnification for his claims, and American Family filed the present action seeking a declaration that it is not required to provide a legal defense or indemnity for the Schwenzers in Sharon's underlying suit. Specifically, American Family sought a declaration that there is no duty to defend and the underlying claims are not covered by the Policy because:

(a) the loss set forth in the underlying Petition does not meet the definitions of "bodily injury" and "property damage"; (b) the loss set forth in the underlying Petition is specifically excluded by the Policy's exclusions cited above; and (c) the Petition in the underlying litigation does not allege an occurrence as defined by the Policy.

Following a bench trial, the court entered judgment declaring that the Policy did not provide for defense or indemnification of the Schwenzers in connection with Sharon's underlying claims. Specifically, the trial court found that Sharon's claims were subject to the owned-property exclusion, the expected-or-intended exclusion, the contractual-liability exclusion, and the punitive-damages exclusion.

This appeal follows.

**Standard of Review**

"When reviewing a declaratory judgment, an appellate court's standard of review is the same as in any other court-tried case." *Guyer v. City of Kirkwood*, 38 S.W.3d 412, 413 (Mo. banc 2001). "[T]he trial court's decision should be affirmed unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law." *Id.* The interpretation of an insurance policy is a question of law, which we review *de novo*. *Rice v. Shelter Mut. Ins. Co.*, 301 S.W.3d 43, 46 (Mo. banc 2009). "[I]n *de novo* review, we will affirm on any basis supported by the record." *TracFone*

6

*Wireless, Inc. v. City of Springfield*, 557 S.W.3d 439, 444 (Mo. App. S.D. 2018). However, an issue not raised in the petition for declaratory judgment is not preserved for appellate review. *Gilles v. Mo. Dep't of Corr.*, 200 S.W.3d 50, 54 (Mo. App. W.D. 2006) ("An issue that was never presented to or decided by the trial court is not preserved for appellate review." (quoting *State ex rel. Nixon v. Am. Tobacco Co., Inc.*, 34 S.W.3d 122, 129 (Mo. banc 2000))). "We 'will generally not convict a lower court of error on an issue that was not put before it to decide.'" *Id.* (quoting *Smith v. Shaw*, 159 S.W.3d 830, 835 (Mo. banc 2005)).

By finding that the Policy provided no coverage, the trial court found that American Family had no duty to defend against or to indemnify for the Schwenzers' claims. The duty to defend is broader than the duty to indemnify. "The duty to defend arises whenever there is a potential or possible liability to pay based on the facts at the outset of the case and is not dependent on the probable liability to pay based on the facts ascertained through trial." *Am. States Ins. Co. v. Herman C. Kempker Constr. Co.*, 71 S.W.3d 232, 236 (Mo. App. W.D. 2002) (quoting *McCormack Baron Mgmt. Servs., Inc. v. Am. Guarantee & Liab. Ins. Co.*, 989 S.W.2d 168, 170 (Mo. banc 1999)). "The duty to defend is determined by comparing the language of the insurance policy with the allegations in the complaint." *Id.* (quoting *McCormack*, 989 S.W.2d at 170). "If the complaint merely alleges facts that give rise to a claim potentially within the policy's coverage, the insurer has a duty to defend." *Id.* (quoting *McCormack*, 989 S.W.2d at 170-71). "Where there is no duty to defend, there is no duty to indemnify." *Id.*

**Analysis**

Section 527.020[5] provides a right of action to those "whose rights, status or other legal relations are affected by a . . . contract . . . , [to] have determined any question of construction . . .

---

[5] All statutory citations are to the Revised Statutes of Missouri, as updated through the 2017 Supplement.

arising under the . . . contract . . . and [to] obtain a declaration of rights, status or other legal relations thereunder." American Family petitioned the trial court for a judgment declaring that the Policy does not provide a legal defense or personal liability coverage for Sharon's claims in the underlying action. The trial court agreed and issued a declaratory judgment in American Family's favor.

On appeal, Sharon raises five points. In his first point, he argues that the trial court erred in finding that the Policy does not cover his negligent misrepresentation and unlawful merchandising claims because they constitute a covered "occurrence" under the terms of the Policy. For his remaining four points, Sharon argues that the trial court erred in concluding that his claims are subject to the owned-property exclusion (Point II), the expected-or-intended exclusion (Point III), the contractual-liability exclusion (Point IV), and the punitive-damages exclusion (Point V).[6]

## I. Sharon met his burden to show that his negligent misrepresentation claim is covered by the Policy to the extent Sharon seeks repair costs for water damage occurring after the sale (Point I).

The insured bears the initial burden of proving that the claims in the underlying action are covered by the policy. *Penn-Star Ins. Co. v. Griffey*, 306 S.W.3d 591, 596 (Mo. App. W.D. 2010). In the present case, Sharon, as the party seeking coverage, must establish that his underlying negligent misrepresentation and unlawful merchandising claims against the Schwenzers are covered by the Policy's general coverage provisions. Conversely, the insurer has the burden to demonstrate that an exclusion to coverage applies. *Id.*

---

[6] In the present case, there has been no resolution of key facts in the underlying litigation, such as whether the damages were the result of the alleged misrepresentation and whether the property damage occurred during the Policy period. "[W]here the controlling facts are unknown and the duty to defend arises out of potential coverage, resolution of the duty to indemnify must await the facts." *Am. States Ins. Co. v. Herman C. Kempker Constr. Co.*, 71 S.W.3d 232, 239 (Mo. App. W.D. 2002) (quoting *Superior Equip. Co. v. Md. Cas. Co.*, 986 S.W.2d 477, 484 (Mo. App. E.D. 1998)). "An insurer has a duty to defend claims falling within the ambit of the policy even if it may not ultimately be obligated to indemnify the insured." *Id.* (quoting *Superior*, 986 S.W.2d at 484-85).

8

For his first point, Sharon argues that the trial court erred in denying coverage because he met his burden by showing that his claims are a covered "occurrence" under the Policy. However, it is unclear from the trial court's judgment whether it actually resolved that issue. The trial court found that Sharon's claims were not covered because four exclusions applied. It is unclear whether the trial court implicitly found that Sharon's claims met the definition of "occurrence" under the Policy before moving on to address the exclusions, or whether the court simply decided not to resolve the underlying coverage question because it concluded that, even if covered by the Policy, the specific claims fell within the delineated exclusions. Either way, it is incorrect to suggest that the trial court found Sharon's claims were not covered by the general coverage terms of the Policy. However, because it makes sense to address policy coverage before considering policy exclusions and we can affirm the trial court's grant of a declaratory judgment on alternative grounds, *TracFone*, 557 S.W.3d at 444, we begin our analysis with Point I.

In pertinent part, the Policy defines "occurrence" as "an accident, . . . which results during the policy period, in . . . property damage"; the Policy defines "property damage" as "physical damage to or destruction of tangible property, including loss of use of this property." Thus, for Sharon's claims to be covered by the Policy, the alleged negligent misrepresentation and unlawful merchandising practices must constitute an accident. And that conduct must result in property damage—physical damage to or destruction of tangible property—during the policy period. We address each of these issues in turn.

In the negligent misrepresentation count of his petition, Sharon alleges that (1) the Schwenzers represented that there had not been any water leakage or dampness in the basement of the Property; (2) those representations were false and the Schwenzers knew or should have known they were false; (3) the Schwenzers failed to exercise reasonable care in making the

representations; (4) Sharon reasonably relied on the representations in deciding to purchase the Property; and (5) as a result of the Schwenzers' misrepresentations, Sharon "incurred and will continue to incur damages in the form of repair costs and the diminished value of the . . . Property."

An alleged negligent misrepresentation can be an accident for purposes of determining whether there is coverage under an "occurrence" provision of an insurance policy. In *Wood v. Safeco Insurance Company of America*, 980 S.W.2d 43 (Mo. App. E.D. 1998), the Eastern District of this court held, "Missouri authority . . . allow[s] negligent conduct to be encompassed by a liability policy providing coverage for an 'occurrence' defined as an 'accident' [as t]his comports with a reasonable person's expectation of liability coverage."[7] *Id.* at 50. In *Wood*, an insured sought indemnification from his insurer after it failed to defend him against misrepresentation claims brought by the purchaser of the insured's property. *Id.* at 45. The buyer alleged that, before the sale, the insured negligently misrepresented that the property was not located in a flood plain, had not flooded, and would not flood. *Id.* at 47. After the sale, the property flooded twice, causing extensive damage. *Id.* at 45-47. The Eastern District concluded that a liability policy restricting coverage to an "occurrence," defined as an "accident," encompasses negligence claims, generally, and negligent misrepresentation claims specifically. *Id.* at 49, 52. This is true even though negligent misrepresentation claims include an element of intent to induce reliance on the misrepresentation because "the falsity in the statement and the resulting injury or damage may be accidental and the claim should be treated like other forms of negligence." *Id.* at 52 (quoting

---

[7] Similar to the Policy at issue in this case, the *Wood* policy defined, in pertinent part, "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the coverage period, in . . . property damage," and "property damage" as "physical injury to or destruction of tangible property including loss of its use." *Wood v. Safeco Ins. Co. of Am.*, 980 S.W.2d 43, 47-48 (Mo. App. E.D. 1998).

10

*Sheets v. Brethren Mut. Ins. Co.*, 679 A.2d 540, 551 (Md. Ct. App. 1996) (internal quotation omitted)).

We agree with Sharon that, under *Wood*, a negligent misrepresentation can be an "accident," thus satisfying part of the definition of an "occurrence." We reach the same conclusion with respect to Sharon's unlawful merchandising claim wherein he alleges that the Schwenzers "used and engaged in acts of . . . misrepresentation . . . before and during the sale of the . . . Property," causing him "[s]pecifically [to] incur[] significant costs to remove, repair and replace portions of the basement of the . . . Property that were damaged by water during [the Schwenzers'] occupancy of the . . . Property."[8] Under the MMPA, "misrepresentation is 'an assertion that is not in accord with the facts' and [neither] 'knowledge that the assertion is false or misleading . . . [n]or any other c[ul]pable mental state' is . . . required." *Plubell v. Merck & Co., Inc.*, 289 S.W.3d 707, 713 n.4 (Mo. App. W.D. 2009) (quoting 15 C.S.R. § 60-9.070). Thus, an unlawful merchandising claim can also be an "accident," satisfying that portion of the definition of an "occurrence."

Even if the alleged negligent misrepresentation and unlawful merchandising practices are accidents, to be covered by the Policy they must have *resulted* in property damage—physical damage to or destruction of tangible property—during the policy period to be a covered "occurrence" under the Policy.

Whether the Policy provides coverage depends on the type of damage Sharon is claiming in his petition, and that is not entirely clear. In both the negligent misrepresentation and the unlawful merchandising counts of his petition, Sharon incorporates by reference common factual allegations, including that, "shortly after taking possession of the subject property[,] . . . significant

---

[8] In his MMPA claim, Sharon alleges that the Schwenzers sold the Property to him for cash, they engaged in acts of misrepresentation before and during sale of the Property, Sharon purchased the Property for use as a personal residence, and Sharon suffered an "ascertainable loss of money and property" as a result of the Schwenzers' unlawful practices.

11

water leaks and water damage [occurred] in the basement"; that "the value of the . . . Property in its 'real' condition at the time of closing was less than the value of the [P]roperty as represented by [the Schwenzers]"; and that Sharon "estimates the cost of repairing 'said issue' will be approximately . . . $49,115.00." In the unlawful merchandising count, Sharon alleges that he has "incurred significant costs to remove, repair, and replace portions of the basement of the . . . Property that were damaged by water *during the [Schwenzers'] occupancy* of the . . . [P]roperty." (Emphasis added.) The negligent misrepresentation count does not include similar language but says generally that Sharon "has incurred and will continue to incur damages in the form of repair costs and diminished value of the . . . Property." In connection with both his negligent misrepresentation claim and his unlawful merchandising claim, Sharon seeks unspecified "cost to repair the . . . Property" as well as punitive damages, attorneys' fees, and costs.

Several federal cases applying Missouri law indicate that, to the extent Sharon seeks costs for repairing damage that existed at the time of sale, those costs are not covered by the Policy because the Schwenzers' alleged misrepresentations did not *cause* that damage. In *St. Paul Fire & Marine Insurance Company v. Lippincott*, 287 F.3d 703, 706 (8th Cir. 2002), the court held that a judgment against insured homeowners for negligent misrepresentation concerning cracks or flaws in the walls or foundation of their home was not a recovery for "property damage" within the meaning of their homeowners policies. The primary policy at issue in *Lippincott* defined "property damage" as "damage to someone else's property or its loss or destruction and the loss of its use." *Id.* at 705. The umbrella policy at issue defined "property damage" as damage to "tangible property or its loss or destruction and the loss of its use." *Id.* The court concluded that the plain meaning of "property damage" under the policies "is a tangible, that is, a physical or material, loss or destruction of physical property." *Id.* The court then held,

12

> The [sellers'] negligent misrepresentations did not *cause* any property damage to the house. Neither did the[ir] actions to conceal the cracks in the house cause any property damage to the house. The structural flaws in the house constitute tangible property damage but these flaws predate the occurrence of concealments and misrepresentations by which the [sellers] incurred liability.

*Id.* at 706 (emphasis added).

Similarly, in *Hartford Insurance Company of the Midwest v. Wyllie*, 396 F. Supp. 2d 1033, 1039 (E.D. Mo. 2005), the court concluded that no property damage occurred as the result of a condominium owner's representations about the condition of the building. The court explained,

> Any defects in the condominium were in existence at the time the [new owners] purchased the property. There was no subsequent damage that diminished the value of the condominium; the condominium's true value was the same at the time of the representations as it was when the [new owners] discovered the alleged misrepresentations.

*Id.* The court distinguished *Wood* because there, "the [property] damage due to flooding occurred as a result of the 'occurrence' of the negligent misrepresentation." *Id.*

We agree that undiscovered defects that exist at the time of the sale are not caused by the misrepresentation. *Lippincott*, 287 F.3d at 706. In fact, the defects must predate the misrepresentation that is the basis of Sharon's claims. *Id.* Thus, Sharon cannot recover costs to repair defects that existed at the time of the sale because they are not damages to tangible property caused by the misrepresentation.

In his negligent misrepresentation claim, Sharon says generally that he "has incurred and will continue to incur damages in the form of repair costs and diminished value of the . . . Property." Thus, the issue becomes whether the alleged property damage caused by water after the sale is properly characterized as property damage caused by the alleged misrepresentations. In *Wood*, the Eastern District of this court found that alleged water damages following the sale could meet the definition of property damage. *Wood*, 980 S.W.2d at 53.

13

The petitions allege, in part, that as a result of the misrepresentation Buyer was damaged [by] the subsequent flooding of property Buyer would not have purchased absent the misrepresentations. Whether or not the flooding damage is causally related to the misrepresentations should have been pursued by Insurer on behalf of Insured in Buyer's litigation, rather than against Insured in this litigation.

*Id*.

Here, to the extent that Sharon claims his reliance on the Schwenzers' negligent misrepresentations caused post-sale water damage because he would not have purchased the property but for the misrepresentations or he relied on the misrepresentations and as a result did not take corrective action that would have prevented said damage, his claim may be a covered "occurrence" under the Policy.[9] Therefore, we must address whether this claim falls within any of the exclusions to coverage cited by American Family.[10]

## II. American Family did not meet its burden to show that the owned-property exclusion bars coverage for post-sale property damages arising from the alleged negligent misrepresentation (Point II).

In his second point, Sharon argues that the trial court erred in finding that the "owned-property" exclusion bars coverage for claims made in his petition in the underlying case. As noted *supra*, the insurer has the burden to prove that a policy exclusion applies to the underlying claims. *Penn-Star*, 306 S.W.3d at 596. "We interpret the language of an insurance policy to mean

---

[9] Although Sharon does not mention diminution in value in his prayer for relief on either count, both counts incorporate by reference earlier paragraphs in the petition that address such damages and Sharon's negligent misrepresentation claim specifically mentions diminution in the value of the Property. To be clear, to the extent Sharon seeks damages in the form of diminution of value, those damages would not be covered by the Policy because diminution damages are not "property damage"; that is, they do not compensate for "physical damage to or destruction of tangible property." Instead, diminution damages compensate for the difference "between the value of the property as promised and its value as actually received." *Kelsey v. Nathey*, 869 S.W.2d 213, 218 (Mo. App. W.D. 1993). And, diminution in value is an intangible injury. *See Payne v. Grinnell Mut. Reinsurance Co.*, 716 F.3d 487, 490 (8th Cir. 2013) (holding that seller's misrepresentations about structural defects did not cause property damage, finding "[w]hile the underlying judgment covered the intangible losses incurred when the [buyers] relied to their economic detriment upon [the sellers'] misrepresentations, there is no applicable coverage from the policy in the absence of property damage caused by the asserted occurrence."). (Internal citation and quotations omitted.)

[10] At issue in the trial court was whether the claims made in Sharon's petition were covered by the Policy. The Petition included counts for breach of contract and fraudulent misrepresentation. On appeal, Sharon does not claim that the trial court erred in finding that these claims were not covered by the Policy.

14

'what a reasonable layperson in the position of the insured would have thought [it] meant.'" *Id.* (quoting *Green v. Penn-Am. Ins. Co.*, 242 S.W.3d 374, 383 (Mo. App. W.D. 2007)). "A policy that is unambiguous must be enforced as written." *Id.* "Because an insured purchases coverage for protection, the policy will be interpreted to grant coverage rather than defeat it." *Id.* "Consequently, we construe exclusionary clauses strictly against the insurer and in favor of the insured." *Id.*

The Policy's "owned-property" exclusion states, in pertinent part, "We will not cover property damage to . . . property owned by any insured." To determine the applicability of this exclusion, we must consider the coverage provided by the Policy. When addressing third party claims, Section II, Coverage D of the Policy states that the insurer "will pay . . . compensatory damages for which any insured is legally liable because of . . . property damage caused by an occurrence." As discussed, *supra*, the Policy definition of occurrence has three elements: (1) an accident, (2) which results in property damage, (3) during the policy period. Because the Policy covers resulting property damage that occurs during the policy period, for the owned-property exclusion to negate coverage, the damage must occur when the damaged property is owned by an insured. Here, the trial court erred in granting American Family's petition for declaratory judgment based on the owned-property exclusion to the extent that Sharon's underlying petition alleges that an accident (a negligent misrepresentation) resulted in property damage (water damage) when the Property was no longer owned by the insured (post-sale).

In its response to Sharon's Point II, American Family argues that the owned-property exclusion bars coverage for Sharon's claim of water damage on the Property after the sale because: (1) the Property was owed by the insured at the time that the misrepresentations were made and thus when the underlying claims arose, and (2) this court's decision in *Shelter Mutual Insurance*

15

*Company v. Ballew*, 203 S.W.3d 789 (Mo. App. W.D. 2006), dictates that the exclusion applies. American Family also alleges that the Policy terminated upon the sale of the Property, and thus, any damage after the sale is not covered by the Policy.

American Family first claims that the alleged defects in the Property and the misrepresentations related to those defects existed or occurred before the sale; thus, the claims arose when the Property was still owned by the insureds, triggering the owned-property exclusion. This argument ignores the fact that Sharon's negligent misrepresentation claim in the underlying case is broad enough to include a claim for damages, in the form of water damage that was caused by the misrepresentations and resulted after the Property was no longer owned by the insureds.[11] Because the Policy covers "an accident . . . which results in [property damage] during the policy period," for the owned-property exclusion to apply, the Property must be owned by the insureds when the resulting damage occurred. Because the Property was not owned by the insureds when the post-sale water damage allegedly occurred, the trial court erred in concluding that the owned-property exclusion barred coverage as to any such claim in the underlying petition.

Next, American Family argues that the trial court did not err in granting its petition for declaratory judgment because this court's decision in *Ballew* dictates that the underlying claims are excluded from coverage under the Policy. In *Ballew*, the buyers' petition alleged that, during the sale, the insured represented that the residence was free of defects; that those representations were false; that the buyers relied on the representations; and as a result, the buyers suffered damages in the form of necessary repairs to their home. *Id.* at 793. We noted that implicit in the buyers' allegations was the fact that the defects existed before the sale. *Id.* "The . . . negligence . . .

---

[11] As noted when addressing Sharon's first point, we agree that the Policy does not cover any claims for the cost to repair damage that existed at the time of the sale. But this is true not because these damages fall within the owned-property exclusion but because they are not damages that resulted from the misrepresentation and thus they were never covered by the Policy.

16

claimed in the underlying action is that which would have had to occur while the [insureds] owned the property. Otherwise, there would have been no false representations. Thus, it was property damage to property owned by the [insured] that gave rise to this cause of action," and therefore, it is excluded from coverage by the owned-property exclusion. *Id.* (internal citation omitted).[12]

We agree that *Ballew* dictates the grant of a declaratory judgment in favor of American Family to the extent that the underlying petition seeks damages for the cost to repair defects in the Property that existed at the time of the sale. But the purchasers in *Ballew* did not make any claim for property damage resulting from the alleged failure to disclose defects (*e.g*., flooding damage) that occurred after the sale. Therefore, as to the property damage that arose after the sale, *Ballew* does not control.[13]

Finally, in its brief, American Family claims,

the policy also does not apply to the time period after [the Schwenzers] sold the house when they no longer had an insurable ownership interest in the home. The policy does not provide coverage once the property is sold and the policy cancelled.

---

[12] In support of our conclusion in *Ballew*, we cited the following definition of the owned-property exclusion:

A provision in a comprehensive general liability insurance policy allowing only third parties who are injured on or by the insured's property to make liability claims against the insurer. The provision ordinarily excludes coverage for (1) property owned, rented, occupied, sold, given away, or abandoned by the insured, (2) personal property in the care, custody, or control of the insured, and (3) property located where the insured and its employees work. (Term: "exclusion.")

*Shelter Mut. Ins. Co. v. Ballew*, 203 S.W.3d 789, 796 (Mo. App. W.D. 2006) (citing Black's Law Dictionary 606 (8ᵗʰ ed. 2004)). But if the owned-property exclusion in the Policy had been intended to exclude coverage from property sold by the insured, that could have been stated explicitly as was the case in the policy at issue in *Payne v. Grinnell Mut. Reinsurance Co.*, 716 F.3d 487 (8th Cir. 2013). The policy at issued in *Payne* expressly excluded coverage for "'property damage' to premises [the insured] sell[s] . . . if the 'property damage' arises out of any part of those premises." *Id.* at 489. Based on that language, the court found that "[t]he policy clearly and unambiguously excludes coverage for 'property damage' to property owned by any 'insured' as well as damage to property sold by the insured." *Id.* at 491. In the present case, the Policy does not contain a similar alienated-property exclusion.

[13] In support of its position, American Family points to the following statement in *Ballew*: "Whether, in fact, damage occurred to the property before or after the sale is a question to be determined in the underlying action and is not the subject of this declaratory judgment action." *Shelter Mut. Ins. Co. v. Ballew*, 203 S.W.3d 789, 793 (Mo. App. W.D. 2006). But that statement must be read in the context of the claims asserted in *Ballew*; there, the buyers sought costs to repair defects that existed at the time of the sale. And, if those costs were not incurred until after the sale that does not matter. That is not the case here where Sharon seeks costs to repair damage that occurred after the sale.

(Resp. Br. p. 23). American Family does not provide a citation to the Policy language or other evidence supporting this claim. Nor did American Family raise this as a basis for declaratory judgment. We will not affirm the grant of declaratory judgment on a basis not raised in the petition. *Gilles*, 200 S.W.3d at 54 ("An issue that was never presented to or decided by the trial court is not preserved for appellate review.") (quoting *State ex rel. Nixon*, 34 S.W.3d at 129). Thus, we will not reach the claim, first made on appeal, that the Policy terminated on the sale of the Property.

Point II is granted.

### III. American Family did not meet its burden to show that the expected-or-intended exclusion bars coverage for post-sale property damages arising from the alleged negligent misrepresentation (Point III).

For his third point, Sharon argues that the trial court erred in finding that his claims fall within the Policy's expected-or-intended exclusion because they "impose liability . . . for acts or omissions that were not 'intentional or expected' but were accidental, and both involve negligent conduct that does not include intended or expected consequences." (App. Br. p. 3).

The Policy does not cover "property damage arising out of an expected or intended act or omission[,] includ[ing] any type of . . . property damage that an insured . . . intends[] or . . . may expect to result from any intentional act or omission." The expected-or-intended exclusion "applies even if the . . . property damage is . . . unexpected or unforeseen by the person injured or the owner of the property damaged . . .[,]" and it "applies regardless of the theory of relief pursued, asserted, or claimed by anyone seeking compensation under this policy."

"A claim for negligent misrepresentation, unlike one for fraud, does not involve a question of intent." *Renaissance Leasing, LLC v. Vermeer Mfg. Co.*, 322 S.W.3d 112, 134 (Mo. banc 2010). "Rather, such a claim is premised on the theory that the speaker believed the information supplied was correct but was negligent in so believing." *Id.* "It is well-settled Missouri law that when a

18

'liability policy defines occurrence as meaning accident Missouri courts consider this to mean injury caused by the negligence of the insured.'" *Stark Liquidation Co. v. Florists' Mut. Ins. Co.*, 243 S.W.3d 385, 393 (Mo. App. E.D. 2007) (quoting *Wood*, 980 S.W.2d at 49) (internal citations and quotations omitted)).

> In its more general sense[,] the term ["]accident["] does not exclude human fault called negligence, but is recognized as an occurrence arising from the carelessness of [people] . . . . [W]hen used without restriction in liability policies, accident has been held not to exclude injuries resulting from ordinary, or even gross, negligence.

*Id.* (quoting *Wood*, 980 S.W.2d at 49) (internal citation omitted). "Moreover, negligent misrepresentation, like other forms of negligence, falls within the meaning of accident and therefore, constitutes an 'occurrence' when the insured neither expected nor intended the event." *Id.*

Here, Sharon's claim for negligent misrepresentation could succeed where the Schwenzers no more than negligently expected or foresaw the water damage asserted by Sharon. For purposes of the expected-or-intended exclusion, "[i]ntend means the insured desires to cause the consequences of his act or believes the consequences are substantially certain to result[,]" and "[e]xpect means the insured realized or should have realized there was a strong probability the consequences in question would result from his acts." *Wood*, 980 S.W.2d at 54 (quoting *Farm Bureau Town & Country Ins. Co. of Mo. v. Turnbo*, 740 S.W.2d 232, 236 (Mo. App. E.D. 1987)). "Missouri courts have found that an insured's reckless acts may not be enough to find an injury was expected by [an] insured." *Id.* (citing *Am. Family Mut. Ins. v. Pacchetti*, 808 S.W.2d 369, 371 (Mo. banc 1991)). Here, we are unable to say that the Schwenzers' acts or omissions were even recklessly injurious as it is conceivable that the Schwenzers believed their repairs were sufficient to prevent future water damage.

Thus, the Policy's expected-or-intended exclusion does not preclude coverage of Sharon's negligent misrepresentation claim.

Point III is granted.

**IV.    American Family did not meet its burden to show that the contract-liability exclusion bars coverage for post-sale property damages arising from the alleged negligent misrepresentation (Point IV).**

For his fourth point, Sharon asserts that the trial court erred in concluding that his claims fall within the Policy's contract-liability exclusion because "neither claim requires personal liability under any contract or agreement and the exclusion does not apply to written contracts directly related to the 'ownership, maintenance or use of' the property insured under the policy." (App. Br. p. 4).

The Policy excludes coverage for "personal liability under any contract or agreement."  But "[t]his exclusion does not apply to written contracts:   a. directly relating to the ownership, maintenance or use of the Insured premises not excluded . . . elsewhere in this policy."  Negligent representation does not require the existence of a contract as an element of the claim.  *ABC Seamless Siding & Windows, Inc. v. Ward*, 398 S.W.3d 27, 34 (Mo. App. W.D. 2013) (listing the elements of negligent misrepresentation).  And Sharon does not base his claim for negligent misrepresentation on the existence of a contract.   But, to the extent Sharon's negligent misrepresentation claim arises out of the sale of the Property as memorialized in the parties' written agreement, the Policy's contract-liability exclusion does not apply to "written contracts . . . directly relating to the ownership . . . of the Insured premises."[14]

Thus, the contract-liability exclusion does not apply to Sharon's negligent misrepresentation claim.

---

[14] Notably, American Family does not mention this exception to the contract-liability exclusion in its brief.

20

Point IV is granted.

**V. American Family did not meet its burden to show that the punitive-damages exclusion bars coverage for post-sale property damages arising from the alleged negligent misrepresentation (Point V).**

For his final point, Sharon argues that the trial court erred in concluding that his claims fall within the Policy's punitive-damages exclusion because "a punitive . . . damages exclusion does not include compensatory or other damages for which the Schwenzers may be liable." (App. Br. p. 5).

The Policy excludes personal liability coverage for "punitive, exemplary, statutorily[-]imposed, multiple, or aggravated damages." Sharon seeks punitive damages in connection with his negligent misrepresentation claim. But the punitive-damages exclusion does not act as a complete bar to coverage because Sharon also seeks compensatory damages for the Schwenzers' negligent misrepresentation, and the fact that Sharon pled both covered damages and excluded damages does not mean both are excluded. *See Bowan ex rel. Bowan v. Gen. Sec. Indem. Co. of Ariz.*, 174 S.W.3d 1, 5 (Mo. App. E.D. 2005) ("It is broadly accepted that[,] where an insured risk and an excluded risk constitute concurrent proximate causes of an accident, a liability insurer is liable as long as one of the causes is covered by the policy.").

Here, a reasonable layperson in the position of the insured would think the punitive-damages exclusion applied only to punitive damages and not to other types of damages. And "we construe exclusionary clauses strictly against the insurer and in favor of the insured." *Penn-Star*, 306 S.W.3d at 596.

Thus, the punitive-damages exclusion does not apply to Sharon's negligent misrepresentation claim to the extent he seeks other types of damages.

Point V is granted.

**Conclusion**

To the extent Sharon's underlying negligent misrepresentation claim seeks costs to repair post-sale water damage resulting from his detrimental reliance on the Schwenzers' negligent misrepresentations, his claim may constitute an "occurrence" under the Policy, and the cited exclusions are not applicable to that claim except to the extent that Sharon seeks punitive damages. Accordingly, we conclude that American Family has a duty to provide the Schwenzers with a legal defense in Sharon's underlying suit, and we reverse and remand for further proceedings consistent with this opinion.[15]

_____
Karen King Mitchell, Chief Judge

Gary D. Witt and Edward R. Ardini, Jr., Judges, concur.

---

[15] Because the only issue is whether the trial court erred in finding that American Family need not provide a defense to the Schwenzers, we do not reach the issue of whether every claim made, including the alleged violation of the MMPA, is covered by the Policy. Nor do we reach the issue of indemnification.